## Kennedy's Appeal.

1. " I bequeath the said house to D. J. and L., but subject to a ground-rent of $500 per annum to be paid in perpetuity, * * if they will not consent to pay the ground-rent * * then this devise shall become null and void, and said property shall return to my estate and for the uses hereinafter specified." *Held*, to import a fee.

2. The charge of the ground-rent was not a precedent condition.

3. The rule that a devise to two or more persons *nominatim* creates a joint tenancy, has been changed by the Act of March 31st 181█ ██int Tenancy). Such a devise now is a tenancy in common.

4. The Act of 1812 is remedial, and to be interpreted according to its spirit to prevent the evil intended to be remedied.

5. Where there is a devise to two or more *nominatim* without a plain intent to vest the estate in the survivor, survivorship is abolished (under the Act of 1812), from the date of the will.

February 23d 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Certificate from Nisi Prius, No. 234, to January Term 1869.

This was an amicable action of ejectment and case stated in which Guadalupe C. Kennedy, widow of James Lenox Kennedy, deceased, and Louisa Kennedy and others his children, were plaintiffs and S. B. Wylie Mitchell and Ellen Keene Mitchell his wife, were defendants.

The premises in controversy are a lot of ground and three-story brick dwelling-house thereon at the north-west corner of Chestnut and Tenth streets, Philadelphia.

The facts in the case stated are as follows :—

Sarah Lukens Keene, of the city of Philadelphia, died May 11th 1866, seised in fee of the premises in question ; and having made her will, dated November 18th 1843, and which was proved June 9th 1866 ; and on the same day letters testamentary thereon were granted to said Ellen Keene Mitchell, sole surviving executrix.

The testatrix, after directing payment of her debts and funeral expenses, amongst other things provided as follows :—

" Second. With regard to the house in which I now reside, at the north-west corner of Chestnut and Tenth streets, and the small lot of ground on which it stands, I bequeath the said three-story brick house on the north-west corner of Chestnut and Tenth streets and the small lot on which it stands to the three children, nephews and niece, of my dear Uncle David Lenox, viz. : David Sproat Kennedy, James Kennedy and Eliza Kennedy (by marriage Hannah), but subject to a ground-rent of $500 per annum, to be paid in perpetuity to my trustees named for a purpose specified in another clause of this testament.

" I have made this bequest *out of respect* to the *memory* of my dear and *venerated uncle, David Lenox, Esq.*, and in right of the *power delegated in his will* to my *beloved aunt*, who conveyed this

[*Kennedy's Appeal.*]

property by a *deed of gift* to me, which is recorded in the register of wills office in the city of Philadelphia.

"If they will not consent to pay the ground-rent of $500 per annum to which *I have* subjected the bequest, then this devise shall become null and void, and the said property shall return to *my* estate and for the uses hereinafter specified.

"I desire also that for two years after my demise my dear niece, Ellen Keene, shall inhabit the house now mine at the north-west corner of Tenth and Chestnut streets,—the bequest of it not to take place until that period.

"The $500 per annum which I have *constituted as the ground-rent* to be paid by David Sproat Kennedy, James Kennedy and Eliza Kennedy (by marriage Hannah), to whom I have devised on that condition only the three-story brick house and small lot at the north-west corner of Chestnut and Tenth streets, I bequeath and devise to my trustees to make part of the $20,000 endowment of the institution to which I dedicate my home at Bristol.

"The residue of my estate, real and personal, I give and bequeath to my dear and affectionate niece, Ellen Keene, subject to the same conditions as my legacy of $30,000 specified in a former part of this instrument, the principal to be invested in ground-rents, or in bank stock considered safe, but preferable in bond and mortgage on real estate, the interest to be enjoyed by her during her life, the principal to devolve to her children, lawful issue, absolutely; if she dies unmarried, she has power to devise it to whichever of her brothers she *will* consider most worthy to inherit her bequest and mine, the interest only to them, to their children, lawful issue, absolutely."

David Sproat Kennedy, one of the devisees above named, died after the making of the above will, and before the testatrix, Sarah Lukens Keene.

Eliza L. Hannay (called in the will of Sarah Lukens Keene, *Hannah*) formerly Kennedy, another of the said devisees, died August 14th 1866, intestate, and leaving a husband John Hannay (since, April 20th 1868, deceased), and one child, James Lenox Hannay, her surviving.

James Lenox Kennedy, the remaining one of the devisees named as above in the will of Sarah Lukens Keene, died December 6th 1866, leaving a widow, Guadalupe C. Kennedy, and seven children, the plaintiffs in this suit, to whom by his will, dated April 16th 1866, he gave the residue of his estate, which would include whatever he might derive under Sarah L. Keene's will.

"The niece of the testatrix, Ellen Keene (by marriage Mitchell), has inhabited the house at the north-west corner of Tenth and Chestnut streets ever since the death of the testatrix.

"On the 1st day of December 1868, there were duly tendered to Mrs. Ellen Keene Mitchell, the surviving trustee named in the will

[Kennedy's Appeal.]

of Sarah L. Keene, $250, being the equal half part of the ground-rent charged upon the premises in question for the first year after the devise of said premises was to take effect, and the said tender was on said day declined by the said Ellen Keene Mitchell.

"Neither the said James Lenox Kennedy nor the plaintiffs have ever refused to consent to pay the ground-rent of $500, charged on the premises in question; nor have they ever expressly agreed to consent thereto except so far as such consent is expressed by the tender hereinbefore mentioned.

"Plaintiffs do now expressly consent thereto.

"If upon the foregoing statement of facts the court should be of the opinion that the plaintiffs are entitled to recover one equal undivided half part of said premises, or one equal undivided third part of said premises, subject to said ground-rent, then judgment to be entered in favor of said plaintiffs for such undivided part; but if of the opinion that the plaintiffs are not entitled to recover any share of said premises, then judgment to be entered for the defendants."

Judgment was entered for the defendants on the case stated.

On removing the case to the court in banc the plaintiffs assigned for error, that the court erred:—

1. In giving judgment for the defendants on the case stated.

2. In not giving judgment for the plaintiffs for one-half of the premises in question.

3. In not giving judgment for at least one-third of the premises in question.

*S. C. Perkins* and *Strong*, for plaintiffs in error.—At the death of testatrix the estate passed to the surviving devisees, D. S. Kennedy having died in her lifetime and on James L. Kennedy's death it descended to his devisees, survivorship having been abolished by Act of March 31st 1812, § 1, 5 Sm. L. 395, Purd. 569, pl. 1, he taking a fee: Act April 8th 1833, § 9, Pamph. L. 249, Purd.1017, pl. 10. There was no tenancy until testatrix's death. The Act of 1812 had in view only estates actually vested and did not intend to affect the construction of wills when the estate devised did not become vested. The whole of this devise at common law would have passed to the survivors: 2 Jarman on Wills 157, 167, 316; Hawkins on Wills 111; Martin *v.* Smith, 5 Binn. 16; 2 Powell on Devises 368; Anon., Cro. Eliz. 431; Davis *v.* Kemp, Carth. 4, s. c. 1 Eq. Cas. Ab. 207, pl. 7; Larkins *v.* Larkins, 2 Bos. & Pul. 16; McKeehan *v.* Wilson, 3 P. F. Smith 74; Wilson *v.* McKeehan, Id. 79; 2 Redfield on Wills 497, pl. 17, note 32; Duncan *v.* Forrer, 6 Binn. 197; Swift *v.* Roberts, 3 Burr. 1496; Schieffelin *v.* Kessler, 5 Rawle 118; Newbold *v.* Prichett, 2 Whart. 46; The Acts of April 8th 1833, § 1, Pamph. L. 249, June 27th 1864, § 1, Pamph. L. 951, Purd. 1016, pl. 1, 1335, pl. 1, recognise

10 P. F. SMITH—33

[Kennedy's Appeal.]

joint tenancies as existing: Gross's Estate, 10 Barr 360; Frankenfield v. Gruver, 7 Id. 448; Arnold v. Jack,. 12 Harris 57; Jack v. Arnold, 1 Grant 405. Consent to the ground-rent has been given and the devisees take the estate *cum onere*: Swoope's Appeal, 3 Casey 58; Hoover v. Hoover, 5 Barr 351. The remedy for it is by entry or action: 2 Powell on Devises 251; Barnardiston v. Fane, 2 Vernon 366; 1 Powell on Devises 195, n. 7; Blake *v.* Bunbury, 1 Vesey, Jr. 523.

*E. K. Price*, for defendants in error.—The title of the devisees must be clearly expressed to disinherit the heirs: Lipman's Appeal, 6 Casey 180. The responsibility for the ground-rent does not arise from the devise but from the acceptance: Hoover v. Hoover, 5 Barr 355. Where a charge is on the devise without words of inheritance and not on the person, the devise will not be enlarged into a fee: Doe v. Clark, 5 Bos. & Pull. 343; 4 Kent's Com. 540; Wright v. Denn, 10 Wheat. 204; Jackson v. Harris, 8 Johns. 141; Jackson v. Bull, 10 Id. 148; Lobach's Case, 6 Watts 171; Hawkins on Wills 134; 2 Powell on Devises 386; Patterson v. Swallow, 8 Wright 487; Wigg v. Wigg, 1 Atk. 382; Gibson's Appeal, 1 Casey 193; Swoope's Appeal, 3 Id. 58; Becker v. Kehr, 13 Wright 230. The consent to the ground-rent should be an active assent: 1 Fonblq. Eq. B. 1, ch. 2, § 1. Power given to several individuals *nominatim* cannot be exercised by the survivors: 1 Powell on Devises 241, 242; Balt. Turnp., 5 Binn. 484; 1 Sugden on Powers 334; 2 Powell on Devises 294. A ground-rent has a personal remedy: Hiester v. Shaeffer, 9 Wright 537. "Vested" as to future interests, means not subject to a condition precedent: Hawkins on Wills 223.

The condition precedent must be fulfilled before the title will vest: Hawk. 241–2; McBride v. Smyth, 4 P. F. Smith 245; 1 Jarman 797; Campbell v. McDonald, 10 Watts 179. And though the condition becomes impossible, the estate will not vest: 1 Jarman 805; Roundel v. Currer, 2 Bro. C. C. 73; Lewisburg v. Augusta, 2 W. & S. 65; Lowther v. Cavendish, 1 Eden 99.

The ground-rent is to be *created;* it is not a charge imposed by the will, it must be by deed: Bantleon v. Smith, 2 Binn. 152; Ingersoll v. Sergeant, 1 Whart. 350; Wallace v. Harmstad, 8 Wright 495. Acts of Assembly as to ground-rents: Purd. 516 *et seq.* A condition precedent must be performed in a reasonable time: Hamilton v. Elliott, 5 S. & R. 375; 5 Viner's Ab. *Condition*, E b, pl. 2; Lord Cromwell's Case, 2 Rep. 78, 384; Andrew's Case, Co. L. 208 b.

The opinion of the court was delivered, March 8th 1869, by

AGNEW, J.—Under the 9th section of the Act of 8th April 1833, relating to wills, the devise to David S. Kennedy, James

Kennedy, and Eliza Kennedy (now Hannay), imported a fee, no other intent being expressed or inferable from Miss Keene's will. The charge of the ground-rent does not alter the rule of the statute, as it exhibits no intent to cut down the inheritance to a life estate. When the question was, whether the charge *enlarged* the estate from life to a fee, the distinction as to whether the rent was affixed to the estate or to the person of the devisee had some importance, but it has none in this case. We think the charge of the ground-rent was not by way of a precedent condition. The öperative words of the devise are present, vesting an immediate estate, while the words imposing the forfeiture for refusing consent to pay the rent, import a consequence taking effect after the devise, for the devise was then to *become* null and void, and the property to return to the estate of the testatrix. Had she intended the estate not to vest until consent had been first given by a ground rent covenant, her evident knowledge of the subject would have led her to say so. She had a clear apprehension of her own purposes, and a ready command of language to express them.

The rule contended for by the plaintiff must be conceded, and under it the devise to these three persons by *name* would have been a joint tenancy. But the operation of that rule upon the estate taken by the devisees, has been ruled in Beeson *v.* Miller, from Fayette county, decided at Pittsburg in 1867 : Legal Journal, January 27th 1868, p. 187. That case determined that a devise to three persons by *name*, and to their heirs, created a tenancy in common and not a joint tenancy, as a consequence of the Act of 31st March 1812. The decision is criticised on the ground that the Act of 1812 operates on the estate, and not on the instrument creating it. In other words, it is said we must continue to interpret the devise to create a joint tenancy with the *jus accrescendi* up to the instant of the testator's death, although then, when the will takes effect, the act *eo instanti* cuts off the survivorship and turns the estate into a tenancy in common. The opinion in Beeson *v.* Miller merely gave the conclusion of the Court and not its reasons, and we are, therefore, asked to recede from it. But the reasons prevailing to make the decision induce us to adhere to it. The rule pre-existing the Act of 1812, which interpreted such a devise to be a joint tenancy, was followed by survivorship, and so long as survivorship attended joint tenancy, the rule and the consequence were consonant. But when survivorship ceased to attend joint tenancy, the rule of interpretation itself must cease to produce that result whenever the survivorship was not within the contemplation of the testator. It is not a rule of policy to be favored, but *cessante ratione cessat et ipse lex.* It is very evident that in a devise to three persons singled out by name, the testator means that each shall have his own share. He expects they will survive him. If

[Kennedy's Appeal.]

he really thought he would survive the devisee, he would scarcely provide for him, or if he did, he would provide for the contingency also. If, therefore, he has made no provision for the death of any of them, because not contemplating that contingency, why should a rule of interpretation conferring survivorship and belonging to an antecedent state of the law, by an unexpected death, vest by survivorship an estate not contemplated or intended to be conferred by the testator? To suffer such a rule to survive its purpose, is to permit it to create estates where none were devised, and to violate the right of disposition by imputing an intention where none exists.

The operation of the rule is confined to the period between the making of the will and the death of the testator. During this interval the will is inoperative, while the testator does nothing to change it. If the objects remain at his death the same as when he distributed his estate by the will, it vests the estate in them precisely as he intended: to each his own share, and they take as tenants in common under the operation of the Act of 1812. Then on what principle of propriety, or of correct interpretation, if one, by death, passes from beneath the will, shall the estate intended for him only, devolve on another to whom it is not given, under a rule of construction pre-existing the statute? The act is remedial and should be interpreted according to its spirit, to prevent the evil it is intended to remedy. The rule of interpretation which would alter the intent of the testator during the period when his will is inactive and his intent remains in abeyance, is purely artificial, and would rob the statute of part of its effect, by establishing survivorship contrary to its spirit, and without the consent of the testator. Nine-tenths of the wills in the state are drawn by persons ignorant of the common-law doctrine of joint tenancy, to whom the idea of survivorship between the date of a will and the testator's death would never occur. To permit survivorship to remain to control the devise in the interval, when the statute strikes it down the moment the will takes effect, would only entrap in many cases.

We hold, therefore, where there is a devise to two or more, *nominatim*, without a plain intent of the testator to vest the estate in the survivor, the incident of survivorship is abolished by a proper interpretation of the Act of 1812, from and after the date of the will, and not merely from the death of the testator. But the testator may direct otherwise. We decide nothing against the power so to devise, we only decide that a rule of interpretation, whose reason has ceased, shall not confer an estate where none is intended to be devised. Before Beeson *v.* Miller this precise question had not been decided. The only cases in apparent conflict are those of husband and wife, which are governed by a different

[Kennedy's Appeal.]

rule founded on their legal unity of person, or entirety of possession or seisin.

The statement that the late Chief Justice Gibson was the author of the Act of 1812, is not strictly accurate. Though introduced by him into the legislature, it is a literal transcript of the Virginia Act relating to partition, passed at the session of October, 1786: 12 Henning 349. The introductory words of our Act of 1812, to wit, "If partition be not made between joint tenants," are accounted for by the fact that the act relates to partition, and this part was taken right out of the body of the section. The proviso that nothing in the act shall be taken to affect any trust estate, is all that is new in the Act of 1812. The judgment is therefore reversed, and we now give judgment for the plaintiffs for the one equal undivided third part of the premises described in the statement of the case.