# Appeal of Pennsylvania Company for Insurances on Lives and Granting Annuities, Trustee.

---

## Lewis Taws's Estate.

A testamentary gift to two tenants in common for their lives, and at their death to their children, goes upon the death of each tenant for life to his children.

(Argued April 7, 1887. Decided April 18, 1887.)

January Term, 1887, No. 294, E. D., before MERCUR, Ch. J., GORDON, STERRETT, GREEN, and CLARK, JJ. Appeal from a decree of the Orphans' Court of Philadelphia County confirming the adjudication of a trustee's account. Affirmed.

At the audit of the account of George W. Snyder, late surviving trustee under the will of Lewis Taws, deceased, before PENROSE, J., the following facts appeared:

Lewis Taws died in December, 1871, leaving a will and codicils, by which he disposed of his residuary estate as follows:

"All the rest, residue, and remainder of my estate, both real and personal, I give, devise, and bequeath unto George W. Snyder, Saunders Lewis, Dr. Thomas Moore, James T. Bradshaw, and the survivors and survivor of them, in trust to lease and demise the real estate and invest the personal estate in bonds and mortgages, or other safe security, to collect, recover, and receive the rents, income, and interest accruing therefrom; and after paying all taxes, charges, and all other expenses attendant upon

the care and management of said trust estate, to pay over the net income and profits thereof to my wife, Martha H. Taws, during all the period of her natural life; and from and immediately after her death then in further trust to pay over and distribute the said net income and profits unto my two daughters, Madeline V. Taws, wife of Dr. Thomas Moore, and Mary G. Taws, to be equally divided between them, share and share alike, during all the period of their natural lives; the receipts of the said parties or their duly authorized agent or attorney to be taken as a full discharge and acquittance to the said trustees for all payments to be made by them.

From and immediately after the death of my said two daughters, I give, devise, and bequeath all my said residuary estate, both real and personal, unto the child or children respectively of my said two daughters, and the issue of such of them as may be then deceased, share and share alike, as tenants in common, their several and respective heirs, executors, administrators, and assigns, forever freed and discharged of and from the said trusts, limitations, and restrictions, hereinabove mentioned, the issue of any child or children so dying to take by representation the share only that his, her, or their deceased parent or parents would have taken had such parent or parents been living at the proper time."

Mrs. Martha H. Taws, the widow, died on the 9th day of July, 1886.

At the time of the decease of the testator one of his daughters, Mary G., was married to Arthur W. Scott. She died October 1, 1876, leaving one child, Lewis Taws Scott, a minor.

Mrs. Madeline V. Moore, the other daughter, is still living, and has four children.

All the trustees being dead, the orphans' court, after the decease of Mrs. Taws, appointed the Pennsylvania Company for Insurances on Lives and Granting Annuities, trustee under the will, for so much of the residuary estate as was then held upon an active trust.

The account of the deceased trustees was filed in the court below, and the company claimed that by virtue of its appointment the whole of the residuary estate was held upon an active trust, and that the whole thereof should be paid over to it. This claim was resisted by the guardian of Lewis Taws Scott, who claimed that as to a moiety of the residuary estate the trust was executed in the ward.

The auditing judge decided in favor of the contention of the minor and awarded to him one half of the residuary estate.

Exceptions to the adjudication were filed by the Pennsylvania Company for Insurances on Lives and Granting Annuities, substituted trustee, and also by Mrs. Moore, as follows: (1) The learned judge erred in not awarding the whole estate in the hands of the representative of the surviving trustee, to be held by them upon active trusts; (2) in decreeing that a moiety of the fund was payable to the minor child of Mrs. Scott; (3) in not reporting that the whole income, during the life of Mrs. Moore, was payable to her; (4) in not reporting that upon the decease of Mrs. Moore the whole residuary estate was distributable *per capita;* (5) in reporting that any portion of the income, during the lifetime of Mrs. Moore, was payable to Scott, minor; (6) in reporting that upon the decease of Mrs. Moore the property was distributable *per stirpes* and not *per capita;* and (7) in reporting that there could be any distribution of the principal until the decease of Mrs. Moore.

Upon dismissing these exceptions and confirming the adjudication, the following opinion was delivered by ASHMAN, J.:

The claim of the contestants that the distributon of this estate must await the death of the surviving daughter, and must then be *per capita,* rests mainly upon a rule of grammar. The testator has spoken in the singular of the death of his two daughters; and it is thence assumed that he meant either the concurrent death of both or the death of the survivor. The former proposition was not urgently pressed. That the testator really had in mind a contingency which required that both of his children should depart this life at the same moment is about as likely as the corresponding fact would be, although the occurrence of such a death is among the possibilities. The alternative proposition, that he meant the death of the survivor, is more plausible; and, if his intent is to depend upon his syntax, it may be correct.

But a study of the will serves to show that neither construction will fulfill the intention of the testator. If the theory of a joint tenancy is in any sense compatible with a gift of the income to the two daughters "to be equally divided between them, share and share alike, during all the period of their natural lives," followed by a gift of the principal to "the child or children respectively of my said two daughters," it is certainly destroyed by the

after direction that the sum of $20,000 shall be taken to be an advancement to one of the daughters, "and that the share of my daughter and her children, under the residuary clause of my will, shall be charged with the amount of the said advancement."

In all this there is not only no hint of a joint tenancy, with its incident of survivorship, and still less of a *per capita* distribution, but there is, on the contrary, a distinct recognition of two shares in the first takers and of two classes of remaindermen. If the estate is to be equally divided between two legatees, the survivor cannot take the whole. If it is to be equally divided, but the period of distribution to the children is postponed to the death of the surviving life tenant, then there will be an intestacy in one share from the earlier death until that time.

We have not overlooked the peculiar phraseology in which, after the death of his daughter, the testator gave all the residuary estate to the children. The exceptants would draw from this the inference that, until both daughters should die, the estate was to remain intact. They asked how, if the estate were divided at the death of one daughter, could all of it remain for division at the death of the surviving daughter? It would not be easy to answer this inquiry if the rules of interpretation compelled us to subject the language of a will to the same canons of criticism by which we approve or condemn a treatise on logic. Fortunately for the infirmity of the average man, the law does not require a testator to be a writer of syllogisms. It may startle a pedant to find this decedent providing that after one half of his residuary estate has been divided at one time, all of it shall be divided at another; but the enigma is solved when we ascertain his meaning to be that all which remains shall be so divided.

This construction is not open to the charge that, in order to reach it, an arbitrary stress must be laid upon the words of the testator. It is a fair deduction from what he had elsewhere said in his will; for it is obvious that when he speaks, as he repeatedly does, of his residuary estate, he refers to a residue of variable quantity. He starts with a residue out of which a sum is to be taken for annuities; he follows with a residue to which this sum has been returned; and he then gives a residue to his wife, which may or may not include this amount, as the annuitants may or may not die in her lifetime. In these instances, the residuary estate to which he refers is only that part of the residue which is left after previous dispositions; and in this sense the share of

the surviving daughter would be literally all of his residuary estate.

. We were referred to the recent case of Jones v. Cable, 114 Pa. 586, 7 Atl. 791, as sustaining the position of the exceptants. In that case the devise was "unto my two sons all my farm after my death, to them as long as they do live, and after their death to their children." This was an undivided gift, and was held (and that was all which was decided) to be a gift in joint tenancy.

What the decision would have been if the gift, as here, had gone in equal shares is shown by the still later case of Affolter v. May, 115 Pa. 54, 8 Atl. 20, where a farm was devised in equal parts to the four daughters of the testator, and the will provided that "the property devised to my daughters do at their death, all and singular, go to my daughters' children." It was held that each daughter had a share in severalty for life, with remainder in fee to her children.

This was only following the text books. Theobald says: "It seems clear that a gift to A and B as tenants in common for their lives, and then, at their death or at or after their death, or at the death of A and B, to their children, goes upon the death of each tenant for life to his children." Theobald, Wills, 4th ed. p. 253.

The same doctrine was asserted in Wills v. Wills, L. R. 20 Eq. 342; Osburn's Appeal, 104 Pa. 637; and Cockins's Appeal, 111 Pa. 26, 2 Atl. 363.

The cases last named were cited by the auditing judge, and his reasoning, we think, is conclusive against the exceptants. The exceptions are dismissed.

Thereupon the Pennsylvania Company appealed. .

The assignments of error specified the action of the court below in not awarding the whole of the residuary estate of Lewis Taws to the Pennsylvania Company for Insurance on Lives and Granting Annuities, to be held upon an active trust; and in decreeing that the trust as to a moiety of said residuary estate was executed, and in awarding the said moiety to Lewis Taws Scott, a minor.

*John G. Johnson,* for appellant.—Did the testator intend that upon the death of each daughter a moiety of his estate should go at once to her children then alive, and to the issue of such of her children as should then be dead? Or did he intend that there

should be no division of his estate until after the death of both of his children?

Assuming an apparent direction to divide on the death of each daughter, there is in the context sufficient shown to qualify it.

As to the failure to use the word "deaths" instead of "death" or the word "survivor." In Jones v. Cable, 114 Pa. 586, 7 Atl. 791, a testator devised his farm to his two sons thus: "I give and bequeath unto my two sons J. and E. all my farm after my death, to them as long as they do live, and after their death to their children," etc. It was held that J. and E. took a life estate, with remainder to their children as purchasers upon the death of their survivor.

In determining the question involved in this appeal, no assistance will be derived from a reference to cases in which, with a context pretty clearly indicating an intent to give a separate share to each legatee or devisee, a remainder over to children "after death" was held to mean of such separate share after the death of each life tenant. In this class of cases see Affolter v. May, 115 Pa. 54, 19 W. N. C. 44, 8 Atl. 20.

The only case cited which in the least favors such construction is that of Wills v. Wills, L. R. 20 Eq. 342. There the provision read thus: "The interest of the residue of my estate vested in the names of said trustees shall be paid half yearly to my sons, C. T. W. and J. W., equally for their natural lives, and at their death the principal to be divided equally between the children of the said C. T. W. and J. W."

This case rests on Arrow v. Mellish, 1 DeG. & S. 355, where the words were: "I give and bequeath the same to my three nieces, viz.: E. C. and S. . . . and also to M. A. . . . to be by them equally divided, share and share alike, and at their deaths to go equally, share and share alike, to their children."

In Wills v. Wills, there was a virtual direction to pay half yearly to each the interest of one half the fund, and at their death the principal of that half was to be paid over to the child of the life tenant.

Arrow v. Mellish and Wills v. Wills were cited in the argument of Swabey v. Goldie, L. R. 1 Ch. Div. 383, where BAGGALLAY, J. A., said: "In every one of the cases cited by Mr. Kay a form of words was used which was ambiguous from its conciseness; and in four of them death was spoken of in the singular

number, though several persons could not be expected to die at once."

As to the lack of any provision for the child or children of a deceased daughter during the lifetime of the survivor. The testator was not bound to provide for a grandchild. For his own daughters he made no provision during the lifetime of his wife. He was dealing with the children of daughters, not with those of sons. He may well have expected that for such children his sons-in-law, their fathers, would provide.

As to the failure to make any disposition during the lifetime of the survivor of the income of the moiety enjoyed by a deceased daughter during her life. We contend that there will be no intestacy, but that the whole income will be payable to Mrs. Moore until her decease.

In Tuckerman v. Jefferies, 11 Mod. 108, 109, 5 Bacon, Abr. 256, title, *Joint Tenants* (F), there was a devise to J. and E. to be equally divided between them during their natural lives, and after the decease of the said J. and E. to the right heirs of J. forever. It was held that J. and E. were joint tenants, notwithstanding the words "equally to be divided between them," and that the survivor took.

In Loring v. Coolidge, 99 Mass. 191, property was given in trust, "the income to be paid equally to my brother and my sister during their natural lives; and at their death the principal I give to my nephews and nieces then surviving." The brother died, and the nephews and nieces claimed distribution of one half of the estate. The court held that the sister was entitled to all the income until her decease.

In Pearce v. Edmeades, 3 Younge & C. Exch. 246, the gift was to E. and G. during their respective lives, in equal shares, and after the decease of the said E. and G., unto and between the children of E. and G.; and it was held that G., who survived E., was entitled to the whole interest during his life, and that on the death of the survivor, the children took, *per capita.*

In Malcolm v. Martin, 3 Bro. Ch. 50, the gift was to the children of G. alive, and the children of L. deceased, to be equally divided between them, and at their decease the same to be divided between the grandchildren of each. There were grandchildren, but no children of G., and children of L., but no grandchildren. It was held that the children of L. took the whole

interest for their lives, and that nothing passed to the grandchildren till the death of all.

In 3 Jarman on Wills, 5th Am. ed. 363, it is said: "In a former work the writer suggested the probability that the principles of construction upon which cross remainders have been implied, among devisees in tail, would be held to apply to estates for life; and, consequently, that if a testator manifested an intention that property previously devised to several persons for life, as tenants in common, should not go over to the ulterior devisee until the decease of all the devisees for life, it would be concluded by the same process of reasoning as had conducted to a similar conclusion in regard to devisees in tail, that the testator meant the surviving devisees or devisee for the time being to take the shares of deceased objects." He refers to Ashley v. Ashley, 6 Sim. 358.

In Abrey v. Newman, 16 Beav. 431, where the division was ordered upon the death of one, it was made among the children of both.

As to the improbability of any intent to treat each grandchild alike by making a *per capita* distribution.

A distribution *per capita* does not shock the moral sense. We see nothing very far out of the ordinary line of testamentary desire in a provision to hold a property in trust until the death of all the children of a testator, and then to divide it among the grandchildren *per capita,* especially where, as in the present case, the grandchildren of one daughter were known to the testator, and those of the other daughter were unborn when he made his will.

In Theobald on Wills, 4th ed. p. 254, it is said: "If the gift to the children is not till after the death of the survivor of the tenants for life, it would seem the distribution will be *per capita* at any rate, if the gift is to the children of A and B and not merely to 'their children.'" Malcolm v. Martin, 3 Bro. Ch. 50; Pearce v. Edmeades, 3 Younge & C. Exch. 246; Stevenson v. Gullan, 18 Beav. 590; Nockolds v. Locke, 3 Kay & J. 6; Swabey v. Goldie, L. R. 1 Ch. Div. 380.

We may add that the word "respectively" was not used to bring about a *per stirpes* distribution; but simply to meet what was in the testator's mind that there could not be children of two daughters; but that there could be children of such daughters

severally, or respectively.   Davis v. Bennett, 4 DeG. F. & J. 329.

There is a plainly expressed wish to postpone the division until after the death of Mrs. Moore.   There is no gift to children excepting "from and immediately after the death of my said two daughters."   The direction is, after the death of both, to divide not part but "all my said residuary estate."   The direction is to divide all the residuary estate not among the children of one, but among the children, if any, of both.   The remainder to the children is contingent—to the children "then" living, and to the issue of any who may then be dead.   Until after the death of both, there is no vested remainder in any child.   Suppose the half of the property is now paid over to Scott, and he dies before the death of Mrs. Moore, how can his issue take?   The trust in any event must be kept alive to preserve the contingent remainder.

· *Victor Guillou*, for appellees.—A joint tenancy in Pennsylvania cannot be implied, but must be expressly created by deed, or will, by clear, unmistakable language.   Seely v. Seely, 44 Pa. 434; Arnold v. Jack, 24 Pa. 57; Jones v. Cable, 114 Pa. 586, 7 Atl. 791.

The whole body of the law is so uniformly against declaring anyone to have deliberately committed "intestacy," that it is never done unless there is no escape from it.   Miller's Appeal, 113 Pa. 459, 6 Atl. 715.

Where a gift is to the children of several persons, whether it be to the children of A and B, or to the children of A and the children of B, they take *"per capita"* and not *"per stirpes."* But this mode of construction will yield to a very faint glimpse of a different intention in the context.   Thus, the mere fact that the annual income until the distribution of the capital is applicable *"per stirpes"* has been held to constitute a sufficient ground for presuming that a like principle was to govern the gift of the capital.   2 Jarman, Wills, 111; Osburn's Appeal, 104 Pa. 637.

It seems clear that a gift to A and B for their lives and then at their death, or at their deaths, or at the death of A and B, to their children, goes upon the death of each tenant for life to his children *per stirpes*.   Theobald, Wills, 151; Flinn v. Jenkins, 1 Colly, Ch. Cas. 365; Taniere v. Pearkes, 2 Sim. & Stu. 383; Willes v. Douglas, 10 Beav. 47; Arrow v. Mellish, 1 DeG. & S.

355; Turner v. Whittaker, 23 Beav. 196; Sarel v. Sarel, 23 Beav. 87; Doe *ex dem.* Patrick v. Royle, 13 Q. B. 100; Brown v. Jarvis, 2 DeG. F. & J. 168.

If the gift is after the deaths of the tenants for life to their children and grandchildren, the families take *per stirpes,* but the children and grandchildren take *per capita inter se.* Theobald, Wills, 151; Barnaby v. Tassell, L. R. 11 Eq. 363.

In a bequest of a residue the interest thereof to be paid to C. and J. equally for their lives, and "at their death" the principal to be equally divided between the children of C. and J., the words "at their death" mean at "their respective deaths," and on the death of C. the moiety, to the interest of which C. had been entitled, becomes divisible among his children. Theobald, Wills, 149; Wills v. Wills, L. R. 20 Eq. 342.

The word "respective" has a strong stirpital force. Fissel's Appeal, 27 Pa. 55; Harris's Estate, 74 Pa. 452; Minter's Appeal, 40 Pa. 111; Risk's Appeal, 52 Pa. 269, 91 Am. Dec. 156; Miller's Appeal, 35 Pa. 323; Gring's Appeal, 31 Pa. 292; Baskin's Appeal, 3 Pa. St. 304, 45 Am. Dec. 641; Witmer v. Ebersole, 5 Pa. 458; Young's Appeal, 83 Pa. 59.; Osburn's Appeal, 104 Pa. 637; Cockins's Appeal, 111 Pa. 26, 2 Atl. 563.

Where the meaning of a devise is uncertain, the law will adhere as closely as poss-ble to the general rules of inheritance; and whoever claims against the law of descent must show a satisfactory written title. Grim's Appeal, 89 Pa. 333; Supplee's Appeal, 16 W. N. C. 378; Finney's Appeal, 17 W. N. C. 494; France's Estate, 75 Pa. 220; Minter's Appeal, 40 Pa. 111; Harrison's Estate, 43 Phila. Leg. Int. 476.

PER CURIAM:

The opinion of the learned judge, in overruling the exceptions to the adjudication of the auditing judge, well sustains the conclusion at which he arrived; and on that opinion,—

The decree is affirmed and appeal dismissed, at the costs of the appellant.