## Brown's Estate.

20

Argued April 23, 1941. Before Schaffer, C. J., Maxey, Drew, Linn, Stern, Patterson and Parker, JJ.

*Charles W. Matten,* with him *George F. Coffin, Jr.,* for appellants.

*Russell C. Mauch,* of *Mauch & Goodman,* with him *Louis E. Hart,* for appellee.

*Calvin F. Smith,* for accountant, appellee.

Opinion by Mr. Justice Parker, September 29, 1941:

This controversy arose on exceptions to a final account as stated by First National Bank and Trust Company of Easton, executor and trustee under the will of Maria L. Brown, deceased. There are involved the construction of the will of deceased for the purpose of determining the circumstances under which a trust created by the will is to be terminated, the right to a stock dividend as between life tenants and remaindermen, and claims for surcharge. Two life tenants, Elizabeth M. Egbert and L. Renton Brown, have taken a joint appeal from a decree of the orphans' court which audited the account. This, of course, is not permissible but we will consider the appeal as the appeal of the first-named appellant, Mrs. Egbert: *Schuetz's Estate,* 315 Pa. 105, 172 A. 865.

Maria L. Brown died April 11, 1914, shortly after making her will. It provided that her sister, Elizabeth Brown, should have a life interest in all her estate aside from specific legacies of personal effects and bank ac-

counts and then by clause eleven disposed of the residue as follows: "All the rest, residue and remainder of my estate, real, personal and mixed, after the death of my sister as aforesaid, I give, devise and bequeath to my Executors, hereinafter named, in trust, to pay the net income thereof to the four, (4) children of my deceased brother, Robert S. Brown, to wit: Robert S. Brown, Frank R. Brown, Elizabeth M. Brown and Lindsey Renton Brown, during their natural lives, for their comfortable support and maintenance, free from any of their debts, contracts and engagements: PROVIDED, that the amount of such annual net income paid to either Robert S. Brown or Frank R. Brown shall not exceed the sum of Nine Hundred Dollars, ($900.), per annum; and all excess of such annual net income so to be paid to Robert S. Brown and Frank R. Brown, shall be equally divided between my niece, Elizabeth M. Brown and my nephew, Lindsey Renton Brown, as above mentioned; and after their death, or the death of either of them, then to pay the principal of my residuary estate as follows: One-fourth thereof to the issue of my niece, Elizabeth M. Brown; one-fourth thereof to the issue of my nephew, Lindsey Renton Brown; one-eighth thereof to the issue of my nephew, Robert S. Brown; one-eighth thereof to the issue of my nephew, Frank R. Brown; and one-eighth thereof to the issue of my niece, Estelle D. Warner; and one-eighth thereof to the issue of my nephew, Dr. Harold Diefenderfer; and in default of issue of them, or either of them, then to the surviving residuary legatees, by representation. The above disposition of my residuary estate is to be subject, however, to the direction hereinafter contained, that no distribution of the principal of my estate shall be made under the residuary clause so long as my interests in the slate properties are undisposed of."

She further authorized her executors or trustees to sell at public or private sale, at their discretion, and convey any of her real or personal property. She gave the

executors broad powers in making investments and specifically authorized them to invest in so-called "non legal" securities. She again provided in clause thirteen that no distribution of principal should be made so long as her interests in the slate properties were not sold.

Elizabeth Brown, the first life tenant, died in 1922, and Frank R. Brown, one of the group of four succeeding life tenants, died in 1916, leaving a minor son, John R. Brown. Since the death of Elizabeth Brown the income has been paid, one-eighth to John R. Brown, $900 to Robert S. Brown, and the balance in equal proportions to Lindsey Renton Brown and Elizabeth M. Egbert. Robert S. Brown died without issue in 1940 while the present proceedings were pending. Elizabeth M. Egbert, Lindsey Renton Brown, Dr. Harold Diefenderfer, and Estelle D. Warner are all living and all have living issue.

The appellant argues that under a proper construction of the will the entire income now available for distribution is payable, since the deaths of Frank R. Brown and Robert S. Brown, to Elizabeth M. Egbert and L. Renton Brown, survivors of the four life tenants. They do not attack the payments heretofore made to John R. Brown, son of Frank R. Brown.

The lower court considered that the testatrix was, in essence, disposing of the residue in four quarters despite the unequal division of income between the four life tenants, so that at the death of each life tenant the interests of the remaindermen who were issue of that life tenant vested not only in interest but also in enjoyment, though the enjoyment must be limited to income because the trust continues until the slate properties are disposed of. Under this construction, the court below held that upon the death of Frank R. Brown his son was properly paid an eighth of the income while the Diefenderfer and Warner issue, if they had asserted their rights, would have been entitled to share another eighth between them, and since the death of Robert S. Brown an additional eighth of the income should be divided between the

Diefenderfer and Warner issue and another eighth should go to the "surviving residuary legatees, by representation."

This construction, gathered from the will as a whole, attributes to the testatrix a primary intention to treat her residuary estate as consisting of four quarters, the income from which was to be adjusted in a different proportion among the four life tenants, giving those of age a smaller share and the minors a larger share. After this provision for the life tenants the quarters were to vest in enjoyment at least, but other grandnephews or nieces, children of Dr. Diefenderfer and Mrs. Warner, were to be admitted as participants in two of the quarters, the shares of Robert and Frank, so as to eventually treat the issue of those four the same.

It must be admitted that the eleventh clause of the will presents some difficulties in construction. This is largely due to the use of the words "after their death, or the death of either of them." When such ambiguities appear, we are justified in considering the circumstances at the time of the execution of the will so as to give the testatrix's words the meaning which will most probably conform to her actual intention. It is an established canon for use in interpreting wills which do not unmistakably reveal the maker's intention that the law will impute to a testator's words such a meaning as under all the circumstances will conform to his probable intention and be most agreeable to reason and justice: *Jackson's Estate*, 337 Pa. 561, 12 A. 2d 338; *Prime's Petition*, 335 Pa. 218, 6 A. 2d 530; *McGlathery's Estate*, 311 Pa. 351, 166 A. 886.

In 1913 when the will was written, L. Renton Brown was eleven years of age, Elizabeth M. Egbert was thirteen, Robert S. Brown was twenty-four, and Frank R. Brown must have been at least that age or more as he died in 1916 leaving a minor son. At the same time, Dr. Diefenderfer had two children, ten and eight years of age, Estelle Warner had three children, fifteen, twelve,

and seven. It is significant that some of the remaindermen were older than the two favored life tenants. It would seem clear that testatrix did not intend, as argued by appellees, that the life estate should all be cut off and the remainders should vest in enjoyment upon the death of any of the life tenants. This would have actually operated to cut short the life estates in 1916 upon the death of Frank R. Brown, and the remainders to the issue of the favored life tenants would have failed because of the lack of any member of that class to take.

The fact that some of the remaindermen were about the same age or older than the favored life tenants also indicates that by the phrase, "after their death, or the death of either of them", testatrix did not intend, as the life tenants argue, to postpone the vesting in enjoyment of all the remainders until either or both of the youngest life tenants had died.

In *Brown's Estate*, 289 Pa. 101, 137 A. 132, we had occasion to construe a provision of the will of Elizabeth Brown with regard to the disposition of the same slate properties where her will contained a provision identical with that in clause eleven of this will. Elizabeth Brown is the first life tenant in the will we are construing and was a sister of this testatrix. The wills were drawn on the same day and on the same plan. We there held that the provision with relation to the disposition of the slate properties did not violate the rule against perpetuities. In construing this provision, we held (p. 115) that it meant that "the estates of the ultimate residuary devisees vest 'in interest' either at the death of testatrix or at the end of the life estates created by her; but that such devisees shall not come into enjoyment of the property and securities . . . in the sense of actually gaining full possession and control of such property and investments, until the testamentary trustees alienate or sell the slate holdings therein referred to." In construing the particular clause in question, "after their death, or the death of either of them", we assumed that "either" was used in the sense of "any".

The word "either" is often used loosely in the sense of "any" and upon consideration of the circumstances it seems that the testatrix used it in that sense here. Upon the death of any one of the life tenants, the class composing his or her issue would be determined and at that time the interests of the remaindermen vested. As we construe the will, the group of remainder interests stemming from a particular deceased life tenant also vests in enjoyment upon his decease. The reasonable construction is that testatrix intended the remaindermen to immediately benefit. Of course, as long as the slate properties were undisposed of, the principal could not be paid over to the remaindermen and they would be entitled only to the income. As we expressed it in *Brown's Estate,* supra, "such devisees [the remaindermen] shall not come into enjoyment of the property and securities . . . *in the sense of actually gaining full possession and control . . .* until the testamentary trustees alienate or sell the slate holdings therein referred to." (Italics supplied.)

This construction is fortified by the additional fact that there is no provision for survivorship rights among the various life tenants. Where there is a devise to two or more by name without a clear intention to vest the estate in the survivor, the estate will be held to vest severally: *Kennedy's Appeal,* 60 Pa. 511, 516; *Goldstein v. Hammell,* 236 Pa. 305, 307, 84 A. 772. In *Appeal of Penna. Co.,* 6 Sadler 173, 10 A. 130, testator set up a trust, the income of which was to go to his two daughters "to be equally divided between them, share and share alike, during all the period of their natural lives. . . . And, from and immediately *after the death* of my said two daughters . . . all my said residuary estate, both real and personal, unto the child or children, respectively, of my said two daughters." (Italics supplied.) It was held that upon the death of one daughter the trust ceased as to the half of the residuary estate, the principal going to the issue of the deceased daughter.

We also call attention to the fact that testatrix made no disposition of the income payable to the life tenants

in the event of the death of any one of them, which would seem to be a further indication that testatrix intended issue to take at the end of the particular life estates: *Tripp's Estate* (No. 1), 202 Pa. 260, 263, 51 A. 983. To adopt a construction that would postpone distribution of the remainders to the date of the death of the last surviving tenant would create an intestacy as to the income upon the respective deaths of three of the life tenants and until the death of the last survivor of them. This is a conclusion that we should avoid if possible.

While the income of the life tenants, Elizabeth and Lindsey, would be less after the death of Robert and Frank, it would not be less than a one-fourth. This is in precise accord with the will which gave the first two a quarter each and enlarged their shares only by reason of a reduction in the share of the latter two and consequently only while Robert and Frank lived. We are all of the opinion that the court below properly construed the will.

The second question raised by appellant concerns the allocation of a stock dividend. The largest item shown in the original inventory and appraisement was 635 shares of the Warren Manufacturing Company, now the Regal Paper Company. In July, 1923, a stock dividend of two hundred per cent was declared by that corporation and 1270 additional shares were delivered to the trustees in October of that year. The appellant claims that the stock dividend should now be apportioned between life tenants and remaindermen, in such proportions that the "intact value" of this stock as a part of the corpus of the estate should be maintained, citing *Waterhouse's Estate,* 308 Pa. 422, 162 A. 295; *Dickinson's Estate,* 285 Pa. 449, 132 A. 352.

The court below, while recognizing the decisions relied upon by appellant, held that "whatever rights the life tenants had in these proceeds [stock dividends] were lost by their inaction following the confirmations of the adjudications of the accounts in which the stock divi-

dend was treated as principal." The appellant in the main attacks the conclusion by questioning the premises. He denies that any of the accounts showed an apportionment of the stock dividend to corpus or that the beneficiaries had any knowledge of such apportionment. We are of the opinion that there is sufficient evidence to support the premises and that the legal conclusion drawn therefrom is sound. We are required to accept facts found by the Orphans' Court in disposing of exceptions to accounts filed by trustees where the facts are supported by evidence: *Smith's Estate*, 332 Pa. 581, 2 A. 2d 779.

The first account of the executors and trustees filed in August, 1916, and the second account filed in December, 1919, showed that there were in their hands, as principal, 635 shares of this stock on which they were receiving regular and extra dividends. A third account was filed in October, 1927, after the stock dividend was declared, showing the cash dividends received on this stock but not disclosing the exact number of shares of stock then held. These accounts were confirmed absolutely and in December, 1927, an auditor was appointed to make distribution to the legatees as shown in all of these accounts. The auditor made distribution and his report was confirmed, no exceptions having been filed. The accounts, while not restating an account of corpus, purported to show all of the income available for distribution and on that basis the distribution was made. While the accounts did not in so many words show that the stock dividend was apportioned to capital, anyone examining the account could have readily discovered that fact.

But it is not necessary to depend on the foregoing accounts for in August, 1933, a fourth account was filed by the First National Bank and Trust Company, executor of the last surviving trustee, showing all dividends received on the entire 1905 shares and specifically setting forth the securities forming the corpus among which were the 635 shares and "1270 shares Warren Manufac-

turing Company received as dividend." The account purported to show all income received in an income account and did not include the stock dividend as such but included it in the account of corpus. The account was confirmed and distribution was made of the balance shown in the income account. Under such circumstances the appellant being sui juris cannot be heard to say that she had no notice of those facts.

In judicial districts having no separate orphans' court, in the absence of rules of court requiring it, an audit of a decedent's estate is unnecessary. The confirmation absolute of the account makes the matter res judicata except for the equitable power of the court to open the account for review within the period fixed by statute.

Even if the action of the appellant be considered as the equivalent of a petition for review, it came too late. It is well settled that a partial account duly confirmed is a definitive decree. Under §48 of the Fiduciaries Act of June 7, 1917, P. L. 447 (20 PS §843), an account presented to the orphans' court, advertised, adjudicated and confirmed absolutely cannot be reviewed after five years from the date of the final decree of confirmation except where fraud is properly alleged and proved: *Forsyth's Estate,* 335 Pa. 281, 286, 6 A. 2d 817. Also, see *Neafie's Estate,* 325 Pa. 561, 191 A. 56; *Elkins's Estate,* 325 Pa. 373, 190 A. 650. We are assuming, of course, that the life tenants had sufficient knowledge of the facts that their inaction can justly be considered acquiescence: *Bard's Estate,* 339 Pa. 433, 436, 13 A. 2d 711. Proof of this knowledge is here supplied by the facts with reference to the fourth account.

Another group of assignments of error has to do with the refusal of the lower court to surcharge the present trustee and accountant for alleged negligence in failing to pursue claims against the estate of the preceding trustee for delinquencies. These assignments must be dismissed for the simple reason that the exceptants failed to furnish affirmative evidence to sustain their contention. "Those who seek to surcharge a fiduciary for a

30

breach of trust must bear the burden of proving the particulars of his wrongful conduct": *Bard's Estate,* supra, p. 437.

The remaining assignments of error deal with commissions and attorney fees. The argument as to commissions is predicated on the success of the appellants in the matters already considered. In view of our decision it is not necessary to give them further consideration except to say that since the stock dividend is sealed in the corpus there can be no commission on it as income. The trustee is entitled to a commission on the cash dividends. As for the attorney fees, this was a matter that rested in the sound discretion of the court below and we see no reason for interfering. In our opinion the fees were reasonable. The court below directed that they be paid out of the principal, the remaindermen have not objected, and the life tenants are only remotely affected.

The decree of the court below is affirmed at the costs of the appellant.