Davidow Estate.

Argued April 17, 1951. Before STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

46

*C. Leo Sutton,* with him *Morris B. Gelb, Richard L. Levy* and *Paxson, Kalish, Dilworth & Green,* for Jewish Federation of Scranton, appellant.

*Paul A. McGlone,* for Trustee ad litem, appellant.

*N. H. Cowdrey* and *Herman J. Goldberg,* for Trustees, appellants.

*Philip V. Mattes,* with him *R. Carl Griffith,* for I. Davidow, appellee.

*Leonard L. Silverstein,* with him *J. Julius Levy,* for Liba Vorabay, appellee.

*Gordon A. Block* and *Wolf, Block, Schorr & Solis-Cohen,* for Gita Rosen et al., appellees.

OPINION BY MR. JUSTICE LADNER, June 27, 1951:

We have before us three appeals from the decree of distribution of President Judge BRADY of the Orphans' Court of Lackawanna County, pursuant to the adjudication of the 4th partial account of the Trustees under the will of Myer Davidow, deceased. Appeal No. 157 is filed by Sol Davidow et al., the accounting trustees; appeal No. 158 by Frank J. McDonnell, Trustee Ad Litem for the unascertained beneficiaries; No. 159 by the Jewish Federation of Scranton, Pa., entitled in remainder under Myer Davidow's will. These appeals all raise the same questions and will be disposed of together.

From the comprehensive adjudication of the learned court below we state the following facts so far as relevant to this appeal. The fund accounted for and distributed arose from a previous award made in the adjudication of a *second* account confirmed March 31, 1941. In that adjudication it appeared the accountants represented to the court that certain named legatees then entitled to legacies aggregating $170,000 resided

in foreign countries and by reason of the world conditions it was impractical to send the funds to them and requested impounding the legacies in the hands of the trustees for the respective legatees' benefit. Whereupon Judge LEACH, then specially presiding, stated in his adjudication, "By reason of the world conditions at the present time, it being impractical to send funds to foreign countries in which these legatees live, and to carry out the intent of the testator, the accountants request that the legacies to the said persons living in foreign countries be impounded with the trustees pending the further order of this Court as to a disposition of these legacies to them, and to be distributed, together with the increment that shall accrue thereon from the date of the final confirmation of the audit, to the said legatees when and as directed by the order of court."

Thereafter followed the award in the following language: "And the bequests amounting to $170,000.00 shown in the 13th finding of fact herein (adjudication of March 18, 1941) are to be impounded in the hands of the Trustees for the benefit of the foreign legatees, to be distributed, together with the increment that shall accrue thereon from the date of the final confirmation of the audit, to the said legatees when and as directed by order of court, as follows, viz.: . . ." after which is recited the names of each distributee with the legacy to which he or she was entitled set opposite the legatees' name.

When the present accounting was filed there remained still impounded in the hands of the trustees, $93,522.36 principal balance of the $170,000 originally awarded. The rest had been paid out to parties entitled. Of this balance on hand Judge LEACH had awarded $15,000 for the benefit of Benjamin Davidow (decedent's brother), and $10,000 each for Benjamin's three children, Rebeka, Leiba and Chaje. This total of

$45,000 was claimed at the audit before Judge BRADY by Israel Davidow of Tel-Aviv through his attorneys in fact. Israel, a son of Benjamin, is the sole next of kin of his father, sisters and brother. Judge BRADY found that Benjamin had been killed March 22, 1944, by the Nazi army in Lithuania and all his family save only Israel (the claimant) had been massacred by the Nazi army, and that Israel was the sole next of kin. Similar findings were made with respect to Jacob and Israel Vorabay, two other legatees, who were killed by the Nazi army on August 18, 1941, and their nearest kin was their mother, Liba Vorabay, who claimed their legacies. Also it was found that Ida Zack, another legatee, died March 5, 1945, a civilian prisoner in a concentration camp in Germany, leaving to survive her as her only next of kin her daughters, Gita Rosen and Lea Block, who claimed their mother's legacy. Upon these findings the auditing judge lifted the impounding order and awarded the respective next of kin the legacies claimed by them. To which action exceptions were filed, dismissed, and adjudication confirmed absolutely.

The appellants contend the court below erred in not giving full effect to the following provisions of Myer Davidow's will which applies to all of the legacies in question, viz., Item 13, subdivisions 20-m and 20-n, which provide as follows:

"m. In the event of the death of the beneficiaries named in subdivisions c and g,[1] hereinabove set forth, before distribution is made to them as provided in said subdivisions, then, and in all such events, the amount herein provided for each such beneficiary dying before said distribution shall lapse and become and be a part of the corpus of my trust estate, and held, administered and paid in accordance with the provisions herein-

---

[1] Subdivision c bequeaths the $15,000 to Benjamin Davidow.

after set forth for the rest, residue and remainder of my trust estate, as provided by the 22nd paragraph of the Thirteenth Item of this, my last will and testament.

"n. In the event of the death of any of my nephews or nieces, provided for or named in subdivisions b, d, e, f, h, i, j, k, and l, hereinabove set forth, leaving issue surviving, before distribution is made to them as provided in said subdivisions, then the issue of such deceased nephews or nieces are to have the sums hereinbefore provided for their parents, the issue of each deceased nephew or niece to take per stirpes and not per capita. In the event of the death of any of my said nephews or nieces, without leaving issue surviving, or in the event of their issue becoming extinct before said distribution, then the sums hereinbefore provided for them shall lapse and become and be a part of the corpus of my trust estate, and held, administered and paid in accordance with the provisions hereinafter set forth for the rest, residue and remainder of my trust estate, as provided by the 22nd paragraph of the Thirteenth Item of this, my last will and testament."

Also subdivision 25 of Item 13, which reads: "25. The provisions herein made for my brothers, sisters, nephews, nieces and their issue are for their, and each of their, sole and separate use, maintenance and support, and are in no event to be liable for any debts contracted by them, or either of them, and are not to be liable to attachment or assignment, but are solely and exclusively for their, and each of their, sole and individual use, maintenance and support and no part of my estate shall vest in said cestuis que trustent, or either of them, until payments shall have been made to her, or him, as the case may be."

As we understand appellants' argument we are urged to rule that the word "distribution" which appears in subdivisions 20-m and n should be construed

in the sense of *payment,* and therefore the deceased
legatees had no vested interest in the legacies because
they were killed or died before *payment was actually
made to them.* And this despite the fact that the word
distribution ordinarily means award upon an account-
ing. However, we agree with the learned court below
in holding this question sought to be raised is no longer
open for consideration in the circumstances of this
case for the reason well stated by Judge BRADY in his
adjudication which we quote with approval: "On the
facts and circumstances as found relative to the claims
presented by the next of kin and heirs of the deceased
legatees, the rights of the claimants rest primarily on
whether the rule of res adjudicata should apply. The
questions in and interpretation of the provisions of the
will covering contingent legacies stand only if the
rule of res adjudicata falls.

"The legacies in question were matters determined
in the decree of distribution following the adjudication
of the second partial account of the trustees. 'A decree
of distribution following the adjudication of a partial
account is a final decree, and the matters determined
in that proceeding cannot again be drawn into con-
troversy between the parties and privies to the decision
in a distribution upon a subsequent account, but, by
"matters determined" is to be understood such facts
and circumstances found or presumed, which fix and
determine the rule of law applicable to the case.' *Keller-
man's Estate,* 242 Pa. 3-11.

"No interested party beneficiary questioned the in-
tention of the trustees when on the audit of their sec-
ond partial account, they requested distribution and
award of the legacies to the foreign legatees, and in
compliance with their request the adjudication was
made. No exception was taken, nor was exception taken
to the adjudication on the third partial account of

the trustees entered September 25, 1945, confirmed finally October 10, 1945, wherein it was found:

" '9. Award has been made to all specific bequests mentioned in the will and the trust funds therein provided for have been set up as will appear by former adjudications in this estate and the account now being audited.' The balance appearing in the adjudication of the third partial account, which was awarded back to the trustees for further administration comprised the residue of the trust estate. The legacies had been previously awarded to the foreign legatees and impounded under the provisions of the adjudication of the second partial account of the trustees, dated March 18, 1941, and confirmed finally March 31, 1941.

"Despite the two adjudications to which no exceptions were filed nor appeal taken the residuary beneficiaries now reverse their position (*Schroeder Est.*, 352 Pa. 172) and the trustees in whose custody the legacies were impounded would, if sanctioned, recapture the legacies from the hands now dead for the benefit of the residuary beneficiaries and change the devolution of property, thus frustrating the intent of the testator, Myer Davidow. The effect and the finality of the distribution and award on the adjudication of the second partial account of the trustees cannot be disregarded.

"Should payment be directed to the estates of the foreign legatees? 'The law is essentially pragmatic; it is concerned primarily with the objective to be attained, and it should not be construed as to require the retracing of one procedural road merely in order to pursue another more conventional one to the same legal terminus.' *Plogstert Estate,* 350 Pa. 474-477.

"The world conditions and particularly the stark realities reflected from the facts and circumstances in the matter before us, are compelling reasons and cause to direct payment to the claimants subject to Execu-

tive Orders or Departmental Regulations of the United States Government."

There is little that need be added to what Judge BRADY has so well stated except to say the cases cited by the appellants' learned counsel in their brief are all cases[2] in which no distributions were actually made in the prior adjudications. They are cases where funds were either reserved or awarded back to the accountants for future disposition or accounting. Here the awards were not so made. There was an actual distribution to the legatees then living and entitled. Only because the world conditions made transmission of funds then impossible or impracticable were they awarded back to the accountants, not, however, for future accounting as part of the original trust funds but "impounded for the benefit of the foreign legatees, to be distributed together with the increment that shall accrue thereon . . . to the said legatees when and as directed by the order of Court." Obviously, the accountants then no longer held these awards as trustees of the testator but in reality as trustees of the legatees for whose benefit they were to hold them. The mere fact that the trustees were the same person is a matter of no importance. This does not prevent such an award from being a distribution. See *Doster Estate,* 346 Pa. 455, 31 A. 2d 142 (1943) ; *Hamilton Estate,* 351 Pa. 419, 41 A. 2d 567 (1945). Judge LEACH might, as was sometimes done during those critical years when legacies could not be safely or legally transmitted to legatees in war torn lands, have awarded them to a different trustee or directed their payment into court as was frequently done to permit the accounting fiduciary to be discharged. The general practice, however, was to do what Judge LEACH did here. But it has never been

_____

[2] In *Bayard's Estate,* 340 Pa. 488, 17 A. 2d 361 (1941) there had been no distribution of *principal* in the previous accountings.

thought such action would permit a re-examination of the original award at a subsequent accounting; certainly not without a review which here is barred by the 5-year limitation in Sec. 48 of Fiduciaries' Act of 1917, P.L. 447, 20 P.S. 320, 721; *Brown's Estate*, 343 Pa. 19, 29, 21 A. 2d 898 (1941); *Elkins's Estate*, 325 Pa. 373, 190 A. 650 (1937).

We come to this conclusion with less regret because a reading of the entire will makes clear that this testator intended his blood relatives to be the primary objects of his bounty and that his charitable legatees were intended to have only what ultimately remained.

Decree affirmed, costs to be paid by the appellants.