# Brown's Estate.

*Declaratory judgments — Construction of will — Perpetuities — Limit of judgment.*

1. Where persons not named in a will present a petition for a declaratory judgment in which they pray that the court construe the will and determine whether or not a residuary clause is illegal as transgressing the rule against perpetuities, and, if illegal, to declare the rights of the petitioners, the court will limit its consideration simply as to whether the will violates the rule against perpetuities, and will not consider other questions that may become matters of controversy if raised by legatees, or which may have to be considered upon the termination of various life

estates; for those points being uncontested in the proceedings at bar and there being no averment in these proceedings that any of such matters is likely to become a matter of future controversy, under the rules applicable to declaratory judgments, they are not ripe for decision.

*Wills—Construction—Rule against perpetuities—Rules of construction — Remainders — Words and phrases — "Disposition" — "Pay."*

2. In order properly to determine the nature of the interest possessed by remaindermen, the actual intent of the creator of such interests must first be discovered, and if the will makes that reasonably clear, it is not necessary to resort to technical rules of construction.

3. The law favors vested rather than contingent estates, and will not suffer the inheritance to be in abeyance, if, by any reasonable construction of the will, it can be avoided.

4. A legacy or bequest will be held contingent or vested as time is annexed to the gift or only to the payment of it, and the question whether or not a testator intended that the ultimate devisee should survive the time of actual distribution in order to possess a vested interest is not to be judged by the mere form of expression employed at any one point, but by the whole scheme of the devise or will.

5. In determining the general intent of a testator as shown by a devise or will, words first used may be explained and made plain by those subsequently employed.

6. The fact that a will contains no limitation over in the event of the decease of ultimate devisees living at the death of the testator, is a consideration tending to show a vesting of such remaindermen; and this is so albeit, as members of a class, their estates may be subject to open up and let in other members born during the duration of the life estate.

7. Where testatrix refers to a provision previously made for ultimate remaindermen as "the above disposition of my residuary estate," and directs that such "disposition" is to be "subject to" a direction thereafter contained in the will, she shows by using the word "disposition" that she had in mind a previous actual bestowal of her property, and that, by the words "subject to" she meant to qualify something substantial already created, that is, to qualify the estates in remainder previously given by her to the ultimate residuary devisees, and this indicates the gift of such estates.

8. That the language here employed is subject to a "direction," not to a "condition," is some indication that testatrix did not contemplate a condition precedent to the vesting of the ultimate remainders.

9. In such case, where the direction referred to, is that no distribution of the estate shall be made until certain properties are sold, testatrix means in using the words "no distribution" that, notwithstanding the fact that the ownership had been disposed of by the will, those to whom she had given such ownership were not to enjoy full and unqualified possession of the property and securities in which her estate was invested until the sale of the properties specified.

10. The fact that the disposition of the properties is left to the judgment of the trustees as to time of sale for the best advantage of the estate, is immaterial as affecting the vesting of the estates previously given.

11. Such a postponement of enjoyment is entirely consistent with vested remainders, and does not prevent them from being sold or disposed of at pleasure.

12. To dispose of a thing is to direct its subsequent ownership.

13. A direction "to pay" over the estate to the ultimate remaindermen, may effect an outright gift or disposition to such remaindermen, just as though testatrix, instead of using the word "pay" had employed phraseology like "I give and devise."

14. If a will shows a clear intention to give beneficiaries vested interests, such intention will not be defeated by the fact that the gift was made in the form of a direction to pay.

15. Where time is annexed to the payment over to the legatee, and not to the legacy itself, such provision does not prevent the immediate vesting of the gift.

16. The direction to pay at the expiration of a life estate, does no more than create remainders contingent until the time arrives, when, if not previously vested, they would vest.

17. The rule against perpetuities is not violated by a will in which testatrix gave, after the death of her sister, all of her estate to trustees to pay the net income therefrom to nephews and a niece named, for life, and, after the death of the life tenant or any of them, "to pay" the principal in certain proportions to the issue of the life tenants and to the issue of a nephew and niece not life tenants," or, "in default of issue of them or either of them, then to the surviving residuary legatees by representation," with a provision that "the above 'disposition' of my residuary estate is to be subject to the direction" that no distribution of the principal of my estate under the residuary clause of this my will shall be made so long as my interests in the slate properties herein referred to are not disposed of," with a further provision that her interest in the slate quarries "shall not be disposed of until such time or times as in the judgment of my trustees the same can be done to the best advantage of my estate."

Argued February 2, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART and SCHAFFER, JJ.

Appeal, No. 1, Jan. T., 1928, by L. Renton Brown and Elizabeth M. Egbert, devisees, from declaratory judgment of O. C. Northampton Co., in matter of estate of Elizabeth Brown, deceased. Reversed.

Petition for declaratory judgment. Before STEWART, P. J.

From the record it appears that Elizabeth Brown, an unmarried woman, without children, died April 20, 1922, leaving a will and certain codicils thereto, which were duly probated and letters testamentary granted to the executors named therein, on April 24, 1922. Testatrix left surviving the following heirs at law and next of kin: Robert S. Brown, Jr., born June 15, 1889, Elizabeth M. Egbert, born March 17, 1899, L. Renton Brown, born December 20, 1900 (all children of Robert S. Brown, a brother, who predeceased testatrix); John Renton Brown, born December 6, 1915 (son of Frank R. Brown, who was the son of the senior Robert S. Brown); Estelle D. Warner and Harold Diefenderfer (children of Sara S. Diefenderfer, a sister, who predeceased testatrix). The two last mentioned, who claim under the intestate law, are the petitioners for a declaratory judgment in this case.

At the time of the death of testatrix, she was the owner of an undivided one-fourth interest in "The North Bangor Slate Company property" composed of approximately 21 acres of land in Northampton County, a like interest in the Bangor Excelsior Slate Company property, which had about the same acreage, each of which properties were and still are used as quarries for slate; and like interests in two undeveloped slate properties, one of 40 and one of 74 acres; all of these undivided interests came to testatrix under the will of her father, John Brown, who died in 1889, seized in fee of the properties in question, and who had leased the North Bangor

property for a term of fifty years. The remaining three-fourths undivided interest in these several properties passed under John Brown's will to testatrix's brother and two sisters, each of whom predeceased her, and the properties are still owned by their respective estates, devisees, or heirs at law.

Elizabeth M. Egbert has the following issue: Donald S. Egbert, Jr., Elizabeth Jean Egbert and Louise Brown Egbert; L. Renton Brown has one child, a minor, Elizabeth Brown; Robert S. Brown, Jr., has no issue; and John Renton Brown is a minor, without issue. The two petitioners for declaratory judgment each have issue living, of whom one is a minor.

All of these minors had notice of the present proceedings through duly appointed guardians.

The will of Elizabeth Brown, deceased, provided in substance as follows: (1) For a life estate to her sister, Maria L. Brown, in all of decedent's property except certain bank deposits, which this item gives to the sister absolutely. Items 2 to 10 inclusive, contain specific devises and special monetary bequests, to take effect after the death of Maria L. Brown, to the following persons and institutions: Elizabeth M. Brown, L. Renton Brown, Estelle D. Warner, Dr. Harold Diefenderfer, the children of Dr. Diefenderfer, the children of Estelle D. Warner, a sister-in-law, Ida M. Brown, the Easton Cemetery Company, and several charitable institutions.

The remaining items of the will are as follows, the 11th being here stated in the phraseology in which it is recast in the first codicil to the will, and the 14th, the way in which it is recast by the fourth codicil:

"Eleventh:—All the rest, residue and remainder of my estate, real, personal and mixed, I give, devise and bequeath to my executors hereinafter named, in trust, to pay the net income thereof to the three children and one grandchild of my deceased brother, Robert S. Brown, to wit:—Robert S. Brown, Elizabeth M. Brown and Lind-

sey Renton Brown, children, and John Renton Brown,
a grandchild, being the son of Frank R. Brown, deceased,
during their natural lives, for their comfortable support
and maintenance, free from any of their debts, contracts
and engagements; Provided, that the amount of such
annual net income paid to Robert S. Brown shall not ex-
ceed the sum of nine hundred dollars, ($900), per an-
num; and all excess of such annual net income so to be
paid to Robert S. Brown, shall be equally divided be-
tween my niece, Elizabeth M. Brown, and my nephew,
Lindsey Renton Brown, as above mentioned; and after
their death, or at the death of either of them, then to pay
the principal of my residuary estate, as follows:—One-
fourth thereof to the issue of my niece, Elizabeth M.
Brown; one-fourth thereof to the issue of my nephew,
Lindsey Renton Brown; one-eighth thereof to the issue
of my nephew, Robert S. Brown; one-eighth thereof to
the issue of John Renton Brown; one-eighth thereof to
the issue of my niece, Estelle D. Warner, and one-eighth
thereof to the issue of my nephew, Dr. Harold Diefen-
derfer; and in default of issue of them, or either of them,
then to the surviving residuary legatees by representa-
tion. The above disposition of my residuary estate is to
be subject, however, to the direction hereinafter con-
tained, that no distribution of the principal of my estate
shall be made under the residuary clause so long as my
interests in the slate properties are undisposed of." ·

"Thirteenth:—I further direct that my interest in the
North Bangor Slate Company property, the Bangor
Excelsior Slate Company property and my real estate
interest, or stock-hold interest in any other slate prop-
erty or slate company, shall not be disposed of until such
time or times as, in the judgment of my executors or trus-
tees, the same can be done to the best advantage of my
estate; acting, if they deem it wise to do so, in conjunc-
tion with the other interests now interested in the same.
No distribution of the principal of my estate, under the
residuary clause of this my will, shall be made so long

as my interests in the slate properties herein referred to are not disposed of.

"Fourteenth:—I nominate and appoint H. J. Steele and my nephew, L. Renton Brown, executors and trustees of this my last will and testament. In the event of the death or resignation of either of them, I appoint the Northampton Trust Company, of Easton, Pennsylvania, co-executor and co-trustee, with the same power and authority, and in the event of the death or resignation of both of said original executors and trustees, I appoint the Northampton Trust Company, of Easton, Pennsylvania, sole executor and trustee of this my last will and testament."

The first codicil, in addition to recasting the 11th item of the will, contains several specific bequests to the same set of persons mentioned in the will itself, and one to William Ruch, for faithful services to testatrix while in her employ.

The second codicil contains specific bequests to several persons already named in the will, to Robert S. Brown, Jr., to the wives of two of her nephews, and to several employees of testatrix.

The third codicil contains several bequests to persons already named in the will and to their wives, also a specific bequest to one person not named in the will.

The fourth codicil changes the 14th item of the will, as to the appointment of executors, to the form above stated.

The court entered the following judgment: "And now, November 22, 1926, the court orders and declares that the residuary clauses of the will of Elizabeth Brown, deceased, as mentioned and referred to in the 11th, 12th and 13th clauses of the will are illegal and void, and the trusts created in the same are terminated, and we order and direct that the executors and trustees shall file an account of their trust, and that the property of the decedent shall descend and be distributed under the in-

testate law; the costs of this proceeding to be paid by the executors."

L. Renton Brown and Elizabeth M. Egbert, devisees, appealed.

*Error assigned* was judgment, quoting it.

*H. J. Steele* and *E. J. Fox,* with them *J. W. Fox,* for appellant.—The law favors vested rather than contingent estates: Hood v. Maires, 255 Pa. 128; McClure's App., 72 Pa. 414.

The only object in postponing the division of the estate was that the three nephews and a niece might enjoy it during their lives: Provenchere's App., 67 Pa. 463; Carstensen's Est., 196 Pa. 325; Safe Deposit Co. v. Wood, 201 Pa. 420; Wickersham's Est., 261 Pa. 121; Siddall's Est., 180 Pa. 127.

The residuary clause in the will of Miss Brown is a stronger one against the rule than the residuary clause in Siddall's Est., supra.

The real distinction in this class of cases, which the court below failed to notice, is that where there is an antecedent absolute gift, independent of the direction and time for payment, the legacy is vested; but where there is no substantive gift, and it is only implied from the direction to pay, the legacy is contingent: Bowman's App., 34 Pa. 19; Yost's Est., 134 Pa. 426; Ewalt v. Davenhill, 257 Pa. 385; Little's App., 117 Pa. 14.

The withholding from the actual owner of a fund, previously given him absolutely, is considered an invalid limitation: McCune v. Baker, 155 Pa. 503; VanDusen's Est., 5 Pa. Dist. R. 234; Hillyard v. Miller, 10 Pa. 326; Mifflin's App., 121 Pa. 205; Hood v. Maires, 255 Pa. 128; Wilkinson v. Buist, 124 Pa. 253.

The provision of the will directing that after the death of the life tenants the trustees were to pay the principal of the estate to the remaindermen shows that testatrix had in mind a period of time within which the power to

sell was to be exercised: Myers's Est., 11 Pa. Co. Ct. R. 194; Githen's Est., 24 Pa. Co. Ct. R. 248; Briggs v. Davis, 81* Pa. 470; Severn's Est., 211 Pa. 68; Buchar's Case, 225 Pa. 427.

*Louis E. Hart,* of *Montgomery, Hart & Smith,* of Chicago, Illinois, with him *Taylor & McCarthy,* for appellees.—In order to satisfy the rule against perpetuities, it is not enough that a contingent event may happen, or even that it will probably happen, within the limits laid down by the rule. If it is possible that it may happen beyond those limits, an interest conditioned on it is too remote: Kountz's Est., 213 Pa. 390.

In the will under consideration, in the paragraph making the residuary gifts, they are expressly made subject to a prior sale by the trustees of the various slate properties. The trustees are given the widest discretion as to when these sales shall be made. The slate properties may be sold in two months, or may never be sold. In any event, the time of their sale and the consequent vesting of the interest of the residuary beneficiaries is entirely indefinite.

There is no certainty that the executors or trustees will ever sell the slate properties; and until they do so there can be no distribution to the beneficiaries in question: Coggin's App., 124 Pa. 10.

The general rule is well established that gifts contained solely in directions to pay or divide or distribute, are construed to be contingent rather than vested: Kountz's Est., 213 Pa. 390; Battenfeld v. Kline, 228 Pa. 91; Rosengarten v. Ashton, 228 Pa. 389; Evans's Est., 264 Pa. 357.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, March 21, 1927:

This is a proceeding, under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, wherein, upon petition of two persons, a nephew and a niece of

Elizabeth Brown, deceased (hereinafter called the testatrix), the disposition of her residuary estate, covered by the 11th paragraph of her will, was declared invalid by the court below, as transgressing the rule against perpetuities. Petitioners, appellees here, are children of a sister who died before testatrix; neither this sister nor her issue are provided for in the parts of the will brought into question by the present proceeding. L. Renton Brown and Elizabeth M. B. Egbert (mentioned in the will as Elizabeth M. Brown), children of a deceased brother of testatrix, to both of whom she devised life estates, have appealed.

We shall recite only such details as seem essential to a clear understanding of the points discussed in this opinion; a more complete statement of the contents of decedent's will and of the attending facts, as shown by the record before us, will be found in the notes of the reporter published in connection herewith.

The first paragraph of the will gives to a sister, Maria L. Brown, a life estate in all the property of testatrix, except bank deposits. This is followed by other paragraphs making certain monetary and specific bequests; then occurs the 11th paragraph, now before us for construction, and this we shall state in the form in which it was recast by a codicil to the will. In paragraph 11, testatrix gave, after the death of her sister, all the rest, residue and remainder of her estate to her executors, in trust to pay the net income thereof to the three children and a grandchild of Robert S. Brown, a deceased brother, naming them thus: Robert S. Brown, Elizabeth M. Brown, Lindsey Renton Brown, and John Renton Brown, the last being the grandchild. This paragraph further provides that, after the death of the aforesaid life tenants, "or at the death of either of them [evidently meaning any of them] then to pay the principal......
as follows: one-fourth thereof to the issue of my niece Elizabeth M. Brown; one-fourth thereof to the issue of my nephew Lindsey Renton Brown; one-eighth thereof

to the issue of my nephew Robert S. Brown; one-eighth
to the issue of John Renton Brown; one-eighth thereof
to the issue of my niece Estelle D. Warner; and one-
eighth thereof to the issue of my nephew Dr. Harold
Diefenderfer; and in default of issue of them, or either
of them, then to the surviving residuary legatees by rep-
resentation." Immediately after this, the part of the
will now under consideration ends with a provision
which the court below thought might, in operation, post-
pone the vesting of the ultimate remainders, previously
provided for in the same paragraph, to a time beyond
the limit fixed by the rule against perpetuities. The
provision in question reads thus: "The above disposi-
tion of my residuary estate is to be subject, however, to
the direction hereinafter contained that no distribution
of the principal of my estate shall be made under the
residuary clause so long as my interests in the slate
properties are undisposed of."

The 13th paragraph of the will contains the direction
as to distribution just mentioned; it provides: "I fur-
ther direct that my interest in the North Bangor Slate
Company property, the Bangor Excelsior Slate Com-
pany property, and my real estate interest or stock-hold
interest in any other slate property or slate company,
shall not be disposed of until such time or times as, in
the judgment of my executors or trustees, the same can
be done to the best advantage of my estate; acting, if
they deem it wise to do so, in conjunction with the other
interests now interested in the same. No distribution of
the principal of my estate under the residuary clause of
this my will shall be made so long as my interests in the
slate properties herein referred to are not disposed of."

In the 14th paragraph of the will, testatrix appoints
certain persons executors and trustees, and provides
that a named trust company shall succeed them in office;
and in the 12th paragraph she confers broad powers on
her executors and trustees to sell and convey her prop-

erty in general, and to invest and reinvest the proceeds, but makes no special mention of the slate properties.

The court below, adopting the contentions of appellees, decided that the gift of the ultimate remainders was to be found only in the direction of the 11th paragraph of the will, to the effect that, after the death of those having a life interest, the trustees should pay the corpus of the residuary estate in named proportions to certain classes of persons; and it ruled that the time of payment was postponed by the clause at the end of this paragraph until the slate properties of testatrix should be disposed of by the trustees named in her will. The court also held that the ultimate remaindermen could not be ascertained until the time of such disposal arrived; and that, on this state of facts, the rights of any members of the classes designated by testatrix ultimately to take her residuary estate were contingent on their surviving the time of actual distribution provided for in the will. Finally, it being within the range of possibility that the slate properties might not be disposed of until a time beyond that allowed by the rule against perpetuities, the court decided that all of the provisions contained in paragraph 11, for the disposition of testatrix's residuary estate, were inoperative. These several conclusions led the court below to the determination that Elizabeth Brown died without a valid will so far as her residuary estate was concerned, and that appellees were each entitled to a portion thereof under the intestate laws of the Commonwealth; it entered judgment accordingly, and this appeal followed.

Unless appellees are entitled under the intestate law, they have no interest in the property here in controversy, since they are neither named in the 11th paragraph of testatrix's will nor do they fall within the classes which it designates as ultimate devisees. Again, the only prayer in appellee's petition for a declaratory judgment is that the court shall determine "whether or not the residuary clause of said will is illegal and void [as trans-

gressing the rule against perpetuities], and, if declared illegal, to further declare the rights of......petitioners." This being the case, we are not called upon to construe the will before us further than to determine whether its language shows that testatrix intended the estates which she conferred on ultimate remaindermen to vest "in interest" (Groninger's Est., 268 Pa. 184, 190) either at her death or at the termination of the prior life estates. This is as far as we have to go, because, if testatrix intended a vesting of the remainders either at her own death or at the termination of the life estates created by her, both of these events would be bound to happen within a life or lives in being and twenty-one years from the date of her death, and hence the vesting would occur within the period fixed by the rule against perpetuities. Under such circumstances, the provision at the end of the 11th paragraph, postponing "distribution," or full "enjoyment" would not of itself cause a delay in the vesting; therefore, it would not in itself effect a breach of the rule in question: Rhodes's Est., 147 Pa. 227, 230; Ewalt v. Davenhill, 257 Pa. 385, 390; Wickersham's Est. (No. 1), 261 Pa. 121, 126; Gray, Rule against Perpetuities (3d ed.), sections 121f and 205. On the other hand, if the language creating the remainders, when read in conjunction with the will as a whole, shows an intention to have them not vest at either of the times above mentioned, and not until the trustees named by testatrix should, in their uncontrolled judgment, alienate or dispose of her slate properties, then it could well be held that the provision postponing distribution till that time was an intrinsic part of the gift of the remainders and that it transgressed the rule against perpetuities, since the vesting might possibly not take place until a time beyond that which the rule allows. But the real question is whether a fair reading of the will requires the construction contended for by appellees. After much study, we have reached the conclusion that it does not.

Before examining the document itself, it may be well to state a few established rules which, though not controlling (since our decision will rest upon what we conceive to be the reasonably plain meaning of the words employed by testatrix), are guides in such an investigation as we have before us: (1) In order properly to determine the nature of the interest possessed by remaindermen, the actual intent of the creator of such interests must first be discovered, and, if the will makes that reasonably clear, it is not necessary to resort to technical rules of construction. (2) The law favors vested rather than contingent estates, and will not suffer the inheritance to be in abeyance if, by any reasonable construction of the will, it can be avoided. (3) A legacy or bequest will be held contingent or vested as time is annexed to the gift or only to the payment of it, and the question whether or not a testator intended that the ultimate devisee should survive the time of actual distribution in order to possess a vested interest is not to be judged by the mere form of expression employed at any one point, but by the whole scheme of the devise or will. (4) In determining the general intent of a testator as shown by the devise or will, words first used may be explained and made plain by those subsequently employed.

A host of authorities have been cited to us by counsel on each side. We are familiar with many of these cases and in the course of our present investigation have examined them all, but deem it necessary to mention only a few. For the first three principles stated in the preceding paragraph, we need cite only Packer's Est. (No. 2), 246 Pa. 116, and the authorities mentioned therein, together with those following that decision and enumerated in Shepard's Pennsylvania Supreme Court Citations. Rau's Est., 254 Pa. 464, is an excellent example of an application of the last of the above-stated principles. This brings us to a consideration of the meaning of the language of the will.

After providing, in the 11th paragraph, for the life interests given to her two nephews, her niece and a grandnephew, testatrix states that, "after their death or at the death of [any] of them," the trustees named by her are "to pay the principal" of her residuary estate to certain classes of ultimate devisees, some of these being constituted by "the issue" of the several life tenants previously named in the will and others by "the issue" of designated relatives who were not life tenants. These provisions may be seen more at large in our quotation from the will as given earlier in this opinion, also in the notes of the reporter, and a significant fact to remember in reading them is that they contain no limitation over in the event of the decease of ultimate devisees living at the date of testatrix's death, which is a consideration tending to show a vesting in such remaindermen: Packer's Est. (No. 2), supra, p. 127. This is so albeit, as members of a class, their estates may be subject to open up and let in other members born during the duration of the life estates: Minnig v. Batdorff, 5 Pa. 503, 505, 507; Edwards's Est., 255 Pa. 358, 361; Wickersham's Est. (No. 1), supra.

As previously stated, the paragraph which we are now construing ends thus: "The above disposition of my residuary estate is to be subject, however, to the direction hereinafter contained that no distribution of the principal of my estate shall be made under the residuary clause so long as my interests in the slate properties are undisposed of." Not overlooking the language first employed by testatrix in creating the ultimate remainders, i. e., the words "to pay," with their context (which we shall discuss later), we construe the provision just quoted to mean that the estates of the ultimate residuary devisees vest "in interest" (Groninger's Est., supra) either at the death of testatrix or at the end of the life estates created by her; but that such devisees shall not come into enjoyment of the property and securities disposed of by the residuary clause of decedent's will, in

the sense of actually gaining full possession and control of such property and investments, until the testamentary trustees alienate or sell the slate holdings therein referred to,—that is to say, until the trustees dispose of or part with such holdings, or realize their value in cash or its equivalent.

Any construction other than the one just stated would leave the inheritance in abeyance, for it would mean an intestacy between the time of the death of the life tenants named by testatrix and the alienation of her slate properties, no matter how long a period that might prove to be. This would necessarily follow from the fact that no one could locate the ultimate residuary devisees until the time arrived for the final distribution of the residuary estate, or, in other words, until after the trustees had sold or disposed of the slate holdings; and, as we have seen by one of the well-established rules above referred to, a construction which leads to such a result is never to be adopted unless it cannot be avoided. Here it is not necessary, because testatrix, at the end of the 11th paragraph of her will, through the very language pointed out and relied on by appellees, renders it reasonably clear that when, in making the devises of the ultimate remainders, earlier in the paragraph, the words, "then to pay the principal of my residuary estate" were employed, she meant to express an actual "disposition," of that portion of her estate to those who, at her death, or at the latest, upon the termination of the life estates, might be members of the classes designated to receive such remainders; thereby indicating that she did not mean the language which we are now discussing to be interpreted as expressing a mere direction to pay to those who might answer her description of remaindermen at the uncertain time that she was about to provide for the actual "distribution" of her residuary estate.

At the end of paragraph 11, testatrix refers to the provision, previously made for ultimate remaindermen

("then to pay," etc.), as "above disposition of my residuary estate," etc. As may be seen by consulting any dictionary, "disposition of" property is the alienation of it, the bestowal of it. To dispose of a thing is to direct its subsequent ownership, and it seems plain to us that testatrix advisedly used the word "disposition" in this sense, thus establishing the effect of the words previously used by her. The context of the clause in which the word "disposition" is employed bears out our construction as to the sense in which it was used. Testatrix says, "The above disposition of my residuary estate is to be subject......to the direction hereinafter contained, that no distribution of the principal of my estate shall be made......so long as......the slate properties are undisposed of." It will be noticed that the language here employed is subject to the "direction," not to the "condition," which is some indication that testatrix did not contemplate a condition precedent to the vesting of the ultimate remainders. Next, it is plain that the phrase "subject......to" is here employed, as it is usually employed, to qualify something substantial already created,—in this instance, to qualify the estates in remainder previously given by testatrix to the ultimate residuary devisees. If no estates had been given there would be nothing in existence to make "subject to" any "qualification"; for it can hardly be thought that testatrix intended to make what appellees would have us regard as a mere direction to pay or distribute her estate at a particular time, i. e., at or after the death of the life tenants, subject to subsequent direction to do so at a different time, i. e., on a disposal by the trustees of her slate properties, which might happen either before or after the end of the life estates. Then, again, the close use of the words "disposition" and "distribution," in expressing testatrix's intention at the end of paragraph 11, indicates that she had in mind a difference between the two. That is to say, by the expression "above disposition," with its context, testatrix signified a recogni-

tion of the fact that she had already directed the owner-
ship of her property, and by the words "no distribution,"
with their context, she signified that, notwithstanding
the fact that her ownership had been disposed of by the
will, those to whom she had given such ownership were
not to enjoy full and unqualified possession of the prop-
erty and securities in which her estate was invested un-
til a certain event named by her had happened, i. e., the
alienation of her slate holdings; but under well-estab-
lished principles, such a postponement of enjoyment is
entirely consistent with vested remainders (see group of
cases cited in seventh paragraph of this opinion), and
does not prevent them from being sold or disposed of at
pleasure: Cooper's Est. 150 Pa. 576, 584.

The court below suggests in its opinion that the use of
the words "disposed of," in the 13th paragraph of the
will, where testatrix provides that her slate holdings
shall not be disposed of until, in the judgment of the
trustees, this can be done to the best advantage of her
estate, shows that the word "disposition," at the end of
paragraph 11, was not intended to have the meaning
which we have given to it. With this we cannot agree;
on the contrary, we think that the use of the phrase "dis-
posed of," in paragraph 13, bears out all we have said as
to the meaning of the word "disposition," as it appears
at the end of paragraph 11. Clearly, in the 13th para-
graph, testatrix means by "shall not be disposed of,"
that the properties in question shall not be sold, alien-
ated, or parted with; and in the 11th paragraph, she
uses the word "disposition" in the same active sense,
that is, to signify that the words previously employed
by her in creating the ultimate remainders, i. e., "then
to pay the principal of my residuary estate," were used
to express a "disposition" of her ownership. Through the
use of the word "disposition," in referring to what she
had previously done with her estate, testatrix evidently
intended to make it clear that she had parted with her
ownership and conferred it on the ultimate remainder-

men indicated in her will, and that she so understood the situation. Again, where, at the end of paragraph 11, testatrix directs that no distribution shall take place "so long as the slate properties are undisposed of," by "undisposed of" she plainly means, are not parted with or alienated by the trustees under her will. In short, wherever the words "disposition," "disposed of," or "undisposed of" are employed in this will, they convey, and were meant to convey, the active idea of parting with or not parting with something.

We take occasion at this point to mention that, by the use of the words "best advantage of my estate," which occur in paragraph 13 of testatrix's will, she indicates that the postponement of the distribution of her residuary estate, until the alienation of the slate properties, was meant by her, not as an intrinsic part of the devise to the ultimate remaindermen, but merely as a direction for the management, benefit, or advantage of her estate; and, this being the case, even though there had been no other gift than "the direction to pay or distribute in futuro," since such payment and distribution appear to be postponed "for the convenience of the property [or estate], the vesting [would] not be deferred" until such future time arrived: Jarman on Wills (6th American ed.), vol. 1, 813; Little's App., 117 Pa. 14, 26; Man's Est., 160 Pa. 609, 612; Marshall's Est., 262 Pa. 145, 149; Groninger's Est., 268 Pa. 184, 190, 191. Here, however, a fair construction of the will shows that the direction to pay over the estate to the ultimate remaindermen was meant to effect an outright gift or disposition to such remaindermen, just as much as though testatrix, instead of using the word "pay" had employed phraseology like "I give and devise" (Packer's Est. No. 2, supra, 127; Rau's Est., 254 Pa. 464, 471) ; under such circumstances, the language employed by her has all the force of an express devise or bequest and cannot be classed as a mere direction to pay, thus changing what would otherwise appear as vested remainders into contingent remainders.

As is conceded, and well said, in the brief of appellees, "If the will shows a clear intention to give the beneficiaries vested interests, such intention will not be defeated by the fact that the gift was made in the form of a direction to pay." In the present will, time is annexed to "the payment over to the legatee," and "not to the legacy [itself]"; such a provision does not "prevent the immediate vesting of the gift": Yost's Est., 134 Pa. 426, 434. The ordinary rule is that, where a devise or bequest, following a prior limitation, is given to a class or classes of persons, the estate vests in interest and the members of the class are to be ascertained as of the date of testator's death, unless a contrary intent is plain (Packer's Est., No. 2, 246 Pa. 116, 124) ; and if the intent is that at the termination of a life estate the devise shall go to a class not in existence at testator's death, then "the remainder is contingent until the birth of a member of the class, in whom it vests immediately subject to open to let in all other members of the class who may thereafter be born during the continuation of the particular estate": Edwards's Est., 255 Pa. 358, 361. Here the direction to pay (which we have already decided is the equivalent of a devise), is to pay at the expiration of life estates, and, at the utmost, this would do no more than create remainders contingent until that time arrived, when, if not previously vested, they would vest. As said before, the status of the remainders would not be changed by the subsequent direction that the residuary estate be held together in the hands of the trustees pending their disposal of the slate properties; this last mentioned provision could have no greater effect than to restrict or qualify the enjoyment of the interests given to the ultimate remaindermen, and would not affect the actual vesting of their estates.

One authority, already cited, so well exemplifies the point last stated that, before closing this opinion, it seems wise to examine it more at large. By the will in Rhodes's Est., 147 Pa. 227, 230, 231, a life interest was

given to a daughter; a codicil devised remainders, at the daughter's death, to testator's nephews and nieces. A subsequent codicil provided that, if the life tenant left children, the latter should be paid fixed annuities until twenty-five years of age, and that testator's estate should "remain in the hands of the trustees *without division* until after all said children arrive at said age." The contention was made, as in the case now before us, that this provision inserted in the will subsequent to the creation of the remainders, postponed their vesting until the time therein fixed for distribution, and as that might run beyond the limits allowed by the rule against perpetuities, such remainders must fall. In overruling this contention, Judge PENROSE, in an opinion adopted by us, Per Curiam, held that the fixing of a time for distribution which might exceed the period allowed by law for the vesting of estates, ordinarily would not be taken as a testamentary indication of an intention to defer the time of vesting to the date of distribution. He said: "The second codicil gives the residuary estate to the nephews and nieces of the testator living at the daughter's death [and] there is not the slightest indication of an intention on the part of the testator to change the time at which the vesting......is to take place, though he does *change the time for making distribution.*"

Though appellees would have us so construe it, the will here for interpretation cannot be read as if the direction to "pay to" and divide among the issue of those persons named by testatrix stood alone, without amplification or explanation, as the only words of gift connected with the ultimate remainders; nor can it be read as though testatrix had provided that, only on the alienation of her slate properties, should the proceeds be paid to the ultimate devisees,—that is to say, as though the testatrix had expressly made the alienation of the slate holdings a condition precedent to the vesting of the ultimate remainders created by her; for the testamentary provisions in question, when taken as a whole, show no such

intention. Finally, we find no evidence in the will of a scheme to keep the residuary estate of testatrix together, in the sense of preventing it from vesting in the ultimate remaindermen, during an unlawful period; on the contrary, all of the testamentary limitations provided for in this will are well outside the effect of the rule against perpetuities, because, as we have pointed out, a reasonable reading of the document, according to accepted canons of construction, shows that all the remainders may be held to vest in ascertainable devisees either at the death of testatrix or at the end of particular estates created by her for persons alive at the date of the will. This was her intention, and the court below erred in holding otherwise.

In conclusion, we may state that, whether the restrictions or qualifications on the enjoyment of the interests or estates given to the ultimate remaindermen, by way of change of time for distribution (first mentioned at the end of paragraph 11 and then in paragraph 13 of the will), are valid, is a question not now before us for decision, and, since no remainderman has raised the point, we shall not discuss it; that problem can be solved when, and if, raised in the future by one possessing such an interest. This may be said also of the question as to how far the discretion given to the trustees by paragraphs 12 and 13 of the will is subject to the control of the courts; and likewise of the question whether the vesting in the ultimate remaindermen occurs at the death of testatrix or at the end of the life estates created by her, —for, as previously said, in either event, the date would be within the period fixed by the rule against perpetuities. While some of the points just mentioned, and others not mentioned, are discussed, touched upon or suggested in the briefs of counsel, yet none of them is raised by the prayer of the petition before us, and, their decision being unnecessary to the determination of this case, we leave them undecided. Certain of these points may become matters of controversy as the life estates

end, hence it would be unwise to determine them now; but, more than this, the points to which we refer are uncontested in the present proceeding and there is no averment therein that any of them is likely to become a matter of future controversy, therefore, under the rules applicable to declaratory judgments, we should not decide them at this time: Kariher's Petition (No. 1), 284 Pa. 455, 464, 467, 468, 469, 471.

The declaratory judgment is reversed and judgment of that character is now entered for appellants in accord with the views here expressed, appellees to pay the costs.