SMITH'S ESTATE et al. v. COMMISSIONER OF INTERNAL REVENUE.

No. 8444.

Circuit Court of Appeals, Third Circuit.

Argued Dec. 21, 1943.

Decided Feb. 2, 1944.

Charles H. Welles, Jr., of Scranton, Pa.,
for petitioners.

Loring W. Post, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before BIGGS, GOODRICH, and Mc-LAUGHLIN, Circuit Judges.

GOODRICH, Circuit Judge.

The Commissioner seeks in this case to sustain his inclusion in the gross estate of Abby R. Smith, who died in 1937, of the value, less a life estate, of certain property conveyed in trust by the decedent in 1919. The trust was made irrevocable in 1925. Alternate grounds are asserted by the Commissioner in support of his action. (1) It is contended that certain future interests, presently to be described, are in violation of the Pennsylvania rule against perpetuities and therefore the value of those interests is includible in the gross estate under § 302(a) of the Revenue Act of 1926, as amended by the 1934 Act, 26 U. S.C.A. Int.Rev.Acts, page 227.[1] (2) In the alternative it is urged that the future interests are includible in the gross estate under § 302(c) of the same Act, ibid,[2] as a transfer intended to take effect in possession or enjoyment at or after death. The Tax Court sustained the Commissioner on the first theory and thus did not find occasion to consider the alternative ground urged. The executors petitioned this Court for review.

The pertinent provisions of the trust indenture are:

"Fifth: To pay over the said income mentioned in the Fourth paragraph hereof, to Elizabeth Richmond Fisk for and during the period of her natural life, and on her death to pay over the income arising from said trust fund to such child or children as she may leave to survive her, as hereinafter provided. In the event of the death of any child or children of Elizabeth Richmond Fisk, leaving child or children him or her surviving, then the child or children of such deceased child shall take the portion of said income his or her parent would have taken if living.

"Sixth: After the death of Elizabeth Richmond Fisk, as her children reach the age of twenty-five years to pay over to each of them their proportion of the trust fund if in the sole discretion and judgment of said trustees it will be wise to so distribute the trust fund, and thereafter at any time if said Trustees shall in their judgment and discretion consider it wise to pay over the principal of said trust fund or any part thereof, they may do so. This clause to cover the payment to any child or children of any deceased child of Elizabeth Richmond Fisk as they reach the age of twenty-five years or thereafter, if in the judgment and discretion of said Trustees it is wise to pay the same. In the case of the death of Elizabeth Richmond Fisk without leaving child or children, or children of deceased child or children, before the corpus of the trust estate has been paid over, then and in that case the said trust fund any [sic] any unpaid interest or income shall be returned into my estate for distribution to my heirs."

When Abby R. Smith died, the life tenant, Elizabeth Richmond Fisk, was living; likewise the latter's four daughters: Elizabeth Fisk Tyler, born July 7, 1911, Margaretta Fisk, born February 23, 1915, Ursula Fisk, born September 15, 1917, Ann Louise Fisk, born June 25, 1921. There was also a great grandson, Harvey Tyler, son of Elizabeth Fisk Tyler, born December 18, 1933.

The first question is whether the future interests following the life estate of the decedent's daughter run afoul of the Pennsylvania rule against perpetuities. Since the decision of the Tax Court on this point turns upon an "unmistakable" question of law, this Court upon review may examine the question and reverse the Tax Court, if it finds "a clear-cut mistake of law." Dobson v. Commissioner of Internal Revenue, 1943, 64 S.Ct. 239, 247. Our basis for testing the Tax Court's de-

[1] "Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside the United States—

"(a) To the extent of the interest therein of the decedent at the time of his death; * * *."

[2] "(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *"

cision is, as agreed upon by everyone, the Pennsylvania law. See Rogers' Estate v. Helvering, 1943, 64 S.Ct. 172.

The rule in Pennsylvania is the one usually stated; an interest which may not vest within a life or lives in being, twenty-one years and the usual period of gestation thereafter is void. Warren's Estate, 1936, 320 Pa. 112, 182 A. 396, 104 A. L.R. 1345. And, where the validity of a gift to a class is involved, the Pennsylvania cases follow the rule of the leading English case of Leake v. Robinson, 1817, 2 Mer. 363,[3] that if the interest of any potential member of the class can by any possibility vest too remotely, the entire gift to the class fails. Coggins' Appeal, 1889, 124 Pa. 10, 16 A. 579, 10 Am.St.Rep. 565; In re Kountz' Estate (No. 1), 1906, 213 Pa. 390, 62 A. 1103, 3 L.R.A.,N.S., 639, 5 Ann. Cas. 427. The Tax Court, citing some of the Pennsylvania decisions, construed the trust indenture to provide for gifts to several classes which were to vest neither in interest nor in possession or enjoyment upon the death of the life tenant. Then it held that since, by possibility, some member of the classes specified might become entitled to take under the trust indenture at a time beyond the period specified in the rule, the gifts to the children and grandchildren were void as to all, and hence everything following the life estate was includible in the decedent's estate. The Tax Court was in error upon the Pennsylvania law. Our analysis of the Pennsylvania law and its application to the undisputed facts of this case follows.

Following the life estate to the settlor's daughter, the settlor provided for a gift to a class composed of her daughter's children, designated for convenience here as Class One. In the event that any member of Class One died before reaching the age of 25, his children, whom we may call Subclass Two, were to take his share of the income and principal as provided. Under the provisions of the trust there were possible as many Subclasses (Two, Three, Four, etc.) as there were members of Class One. In such a case it is the accepted rule that the possibility of a gift to any member of a subclass violating the rule against perpetuities and thus rendering the gift to that subclass invalid, does not invalidate gifts to other subclasses or a prior class, if they are otherwise valid.[4] Under such circumstances the gift to each class must be examined separately to determine its validity. The Tax Court therefore made a "clear-cut mistake of law" when it applied the rule of Leake v. Robinson, applicable in the case of "one class" gifts, to the several separate class gifts, thus in effect treating a number of distinct classes as one class. The next step is to consider the validity of the gift to the separate classes.

### The Gift to Class One

Under the trust indenture it is clear that the settlor did not intend the various classes mentioned to close at the time the indenture took effect. Nor was the gift by its terms only to those children and grandchildren of the daughter living upon the daughter's death. The general rule is that in the case of a gift to a class, the members of that class who are to take are ascertained at the time set for distribution.[5] In the case of the Class One here, the time for distribution of the corpus would be when the first member of the class (settlor's grandchildren) attained twenty-five, after the termination of the prior life estate.[6] If there were no provisions for income payments before that time, the gift to them would violate the rule against perpetuities. Coggins' Appeal, supra. However, we think it clear under the Pennsylvania decisions that the provision for payment of the income of the trust to the members of Class One saves their gift from invalidation under the rule.

It has long been the law in Pennsylvania that a direction that income be paid to an ascertained beneficiary of a

---

[3] Critically appraised by Professor Leach in The Rule Against Perpetuities and Gifts to Classes (1938) 51 Harv.L. Rev. 1329.

[4] Leach, The Rule Against Perpetuities and Gifts to Classes, supra, at p. 1347; 2 Simes, Law of Future Interests (1936) § 528 at p. 404; Gray, The Rule Against Perpetuities (4th Ed. 1942) §§ 389–398.2. Restatement, Property (Tent. Draft No. 13, 1942) § 389. For Pennsylvania authority, see In re Kern's Estate, 1929,

296 Pa. 348, 145 A. 824, 66 A.L.R. 1342, citing Gray's 3rd Edition; but cf. Smith's Appeal, 1879, 88 Pa. 492, adversely criticized in Gray's 4th Edition, supra, § 395, and overruled in Warren's Estate, supra.

[5] Casner, Class Gifts to Others Than to "Heirs" or "Next of Kin" Increase in the Class Membership (1937) 51 Harv.L.Rev 254, 260; Heisse v. Markland, 1830, 2 Rawle 274, 21 Am.Dec. 445.

[6] In re Austin's Estate, 1934, 315 Pa. 449, 173 A. 278.

trust until there is a distribution to him of corpus, indicates an intention that a present gift was intended. In such a case, age is not descriptive of those who are to take but of the date of payment. The particular interests vest with only possession and enjoyment postponed. In re Bilyeu's Estate, 1943, 346 Pa. 134, 29 A.2d 516; Safe Deposit & Trust Co. v. Wood, 1902, 201 Pa. 420, 50 A. 920. Here, the members of Class One will necessarily be definitely ascertained at the time the preceding life estate terminates since they are the children of the life tenant. Consequently, the number who would share the income at that date would be determinable. Since, under the trust they are to receive the income upon the termination of the life estate until the corpus is distributable, their interests vest upon the termination of the life estate. Therefore, the gift to them does not violate the rule against perpetuities, since their interests must vest, if at all, upon the death of their mother, a life in being when the trust was executed. That the interest of any member of Class One would be subject to divestment in the event that member does not reach twenty-five, is immaterial. In re Bilyeu's Estate, supra.

### The Gifts to Subclasses

It can easily be seen that the interests sought to be created in children of members of Class One (Subclasses Two, Three and so on), born after the creation of the trust, do violate the rule against perpetuities. For example, the daughter who is the life tenant, might by possibility, give birth, after the trust was created, to a child, who would become a member of Class One. The mother, and all her other children, and all other possible lives in being, might by possibility die when this child was a year old. There would then no longer be any lives in being. By possibility this one surviving child might have a child, a member of a subclass, at twenty-four and then die. Thus, even if it be assumed that this member of the subclass would then take his interest immediately, he would take beyond the time of any life in being and twenty-one years and the gift to him would thus be invalid. For this reason the trust is invalid as to any subclasses comprised of children of members of Class One who were born after the trust indenture was executed.

However, as to subclasses comprised of children of members of Class One in being prior to the creation of the trust a different result obtains. Those members of Class One were lives in being at the time the trust was created. Any children that any one of those members have, will of necessity, therefore, be born within a life in being. Should such a member of Class One die before attaining twenty-five then the subclass of his children will be ascertainable at his death. The gift to members of this subclass is not violative of the rule against perpetuities for the same reasons that the gift to members of Class One was not invalid. And this is true of all the subclasses comprised of children of the members of Class One living when the trust was executed. Their interests must vest, if at all, within lives in being, their parents.

### The Provision Making Distribution Subject to the Discretion of the Trustees

One other provision of the trust, however, requires consideration on this phase of the case. It is the provision in the sixth clause of the trust making distribution of corpus subject to the discretion of the trustee. The apparent contention of the Commissioner is that this indicates the interests granted were not to vest in interest until the trustees in their judgment deemed it wise to make distribution. But, other provisions of a trust may require a construction that making distribution subject to the discretion of the trustee is merely an administrative provision not determinative of the time of vesting. See In re Brown's Estate, 1927, 289 Pa. 101, 137 A. 132. And, where the instrument indicates that the interests given thereunder are vested, a discretionary distribution provision will not operate to alter the time of vesting. That is true here. The intermediate absolute gift of income requires a construction that the interests of the beneficiaries were vested. Just as the income provision determines that vesting in interest takes place before the attainment of twenty-five, one of the conditions of distribution of the corpus, so it also determines that the vesting in interest occurs prior to the time the trustees deem it wise to make distribution. Millard's Appeal, 1878, 87 Pa. 457.

### Separability of the Invalid from the Valid Gifts

We have then, a common situation where some of the future interests created by the

trust are valid and some violate the rule against perpetuities. Recapitulating, the gift to the children of the life tenant, the members of Class One is valid. The future interests of the various subclasses of the children of members of Class One living at the time the trust was created are also valid. The future estates, however, to the subclasses comprised of children of members of Class One born after the trust was created are invalid. Does the invalidity of the latter render invalid the other future interests which do not violate the rule against perpetuities? We do not think so.

Not so many years ago one writer characterized the decisions of the Pennsylvania court on this general question as reflecting "a punitive spirit which invalidates many entire wills and trusts which would be given partial effect in other states." [7] However, recent decisions fail to show any such "punitive spirit" and the older precedents, as cited and rationalized, make a strong case for innocence under the commentator's indictment. The modern leading case in Pennsylvania on the effect of partial invalidity of a trust, because of the rule against perpetuities, on the valid interests is Quigley's Estate, 1938, 329 Pa. 281, 198 A. 85, 89. Mr. Justice Stern there collects Pennsylvania authorities and after reviewing them states that the inquiry, in such cases, should be "whether 'the striking down of the void gifts would, in vital matters, so emasculate his (the testator's) plan of distribution as to render it reasonably certain he would not have made the will in the way he did had he known it could not be sustained in the respects in which it must be set aside'." or in the alternative "Would the testator have intended that all the limitations of the trust should stand or fall together?" Applying this test to the instant case,[8] the answer is apparent. At the time the settlor created the trust, her daughter and three children of the daughter were living. The settlor's immediate solicitude was for the welfare of her daughter and her grandchildren. There is no apparent ulterior motive to defer distribution to some too remote fixed time as an end in itself. The life estate for the daughter, and the provisions for the daughter's children were the primary objects of the settlor. The provisions for her daugh-

ter's grandchildren, not then even living, were but substitutional provisions. We do not hesitate to conclude that, if the settlor knew that the trust would be held void as to the children of her daughter's children who would be born after the trust was executed, she would have nevertheless intended the valid portions of the trust should remain intact. See In re Yewdall's Estate, 1942, 343 Pa. 478, 23 A.2d 460.[9] The interests created by the trust of Abby R. Smith which do not violate the rule against perpetuities are not therefore vitiated by those which do violate the rule.

Upon the first question, then, our conclusion is that all the future interests created by the trust agreement are not includible in the gross estate of the decedent under § 302(a). However, it is to be noted that interests given to children of the life tenant's children born after the trust was created, which are invalid, would be includible under § 302(a). The trust was originally executed in 1919. The life tenant then had three children living. Her fourth and last child was born in 1921. The trust was amended and made irrevocable by the settlor in 1925. Whether the Commissioner, if he should fail in his alternative ground, would claim that the invalid portion should be included in the decedent's gross estate and whether he would succeed, need not be determined now. The case must go back to the Tax Court and the Commissioner will no doubt press that point if he desires, then.

The Tax Court, having sustained the Commissioner on his first point, did not decide the second theory urged by him. It is, as stated, that the future interests are includible in the gross estate under § 302 (c) as a transfer intended to take effect in possession or enjoyment at or after the decedent's death. See Helvering v. Hallock, 1940, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368. We believe, in view of the recent decisions of the Supreme Court in Dobson v. Commissioner of Internal Revenue, supra, and Commissioner of Internal Revenue v. Heininger, 1943, 64 S. Ct. 249, that the Tax Court must initially determine this question.

The decision of the Tax Court is reversed and the case remanded for further proceedings consistent with this opinion.

---

[7] Leach, Perpetuities in a Nutshell (1938) 51 Harv.L.Rev. 638, 657.

[8] See Restatement, Property (Tent. Draft No. 13, 1942) § 389, com. f.

[9] For a comparable decision during the purported "punitive spirit" era see In re Kern's Estate, supra; but cf. In re Kountz' Estate (No. 1), supra.